**BANNER INDUSTRIES, INC.,**
Plaintiff/Counterdefendant,

v.

**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND,** and its present Trustees in their capacity as Trustees, Defendants/Counterclaimants,

and

**Pepsico, Inc., et al., Defendants.**

No. 86 C 3046.

United States District Court,
N.D. Illinois, E.D.

July 2, 1987.

Roger L. Taylor, Kirkland & Ellis, Carl L. Taylor, Thomas D. Yannucci, Kenneth N. Bass, Kirkland & Ellis, Washington, D.C., for plaintiff/counterdefendant.

Neil Quinn, Richard Waris, Mary Anne Capron, Pretzel & Stouffer, Chtd., Chicago, Ill., Deborah Fabricant, Stanley J. Adelman, Rudnick & Wolfe, Richard S. Huszagh, Edward J. Calihan, Jr., Chicago, Ill., Thomas C. Nyhan, Stanley J. Brown, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., John R. Climaco, John Masters, John A. Peca, Jr., Thomas L. Colaluca, Climaco Climaco Seminatore, Lefkowitz & Garofoli, Cleveland, Ohio, for defendants/counterclaimants.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

In a memorandum opinion and order dated March 25, 1987[1] ("*Banner I*"), this court granted the motion of the Central States, Southeast and Southwest Areas Pension Fund ("Central States") to dismiss Count I of the complaint filed by Banner Industries, Inc. ("Banner"), finding that Banner's challenge to the assessment of withdrawal liability against it by Central States should have been put before an arbi-trator and not this court. Accordingly, we denied Banner's motion for summary judgment on the merits of its challenge, and, finding that Banner had not waived its right to arbitrate the dispute, referred the matter to arbitration.[2] We also granted Central States' motion for summary judgment on its claim for interim payments, finding that § 1401(d) of the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1381 *et seq.*, mandated that Banner make such payments pending a final decision by the arbitrator. The court ordered that Banner begin making such payments on April 1, 1987, and Banner has complied with that order; however, the court reserved ruling on whether Banner was also required to pay all arrearages on the interim payments. The court sought briefing on this issue and Central States responded by filing a motion for an award of past due interim payments, interest, liquidated damages, and attorney's fees. The briefing on this motion is now completed, and the court has heard oral argument. For the following reasons, Central States' motion is granted.

Banner essentially makes two arguments in opposition to Central States' motion. First, Banner argues that the decision whether to grant the award Central States seeks is a matter of discretion for the court, and that this court should exercise its discretion to deny Central States' motion because (1) Banner cannot be found "delinquent"; (2) the balance of hardships is in Banner's favor; and (3) the policies of MPPAA would not be furthered by granting Central States' motion. Alternatively, Banner argues that granting the relief sought by Central States would deprive Banner of rights to which it is entitled under a recent Seventh Circuit decision, *Robbins v. McNicholas Transportation Co.*, 819 F.2d 682 (7th Cir.1987) and would also deprive Banner of its property without

---

1. *Banner Industries, Inc. v. Central States, Southeast and Southwest Areas Pension Fund,* 657 F.Supp. 875 (N.D.Ill.1987). The facts giving rise to the dispute in this case are set forth in our earlier opinion and are not repeated here.

2. On April 10, 1987, 663 F.Supp. 1290; we amended our March 25 memorandum opinion and order to certify the arbitration and waiver questions to the Seventh Circuit pursuant to 28 U.S.C. § 1292(b). In an order dated May 20, 1987, the Seventh Circuit granted leave to appeal those issues.

due process of law. We find these arguments to be without merit.

## I. *Interim Payments*

### A. *The Court's Discretion with Respect to Interim Payments*

As we indicated in our earlier memorandum opinion, § 1399(c)(2) expressly provides that:

> Withdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor under subsection (b)(1) of this section beginning no later than 60 days after the date of the demand notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule.

Similarly, § 1401(d) provides, in relevant part:

> Payments shall be made by an employer in accordance with the determinations made under this part until the arbitrator issues a final decision with respect to the determination submitted for arbitration, with any necessary adjustments in subsequent payments for overpayments or underpayments arising out of the decision of the arbitrator with respect to the determination.

On the basis of these provisions, we ordered in our previous decision that Banner commence making interim payments to Central States.

To the extent Banner urges that this court is vested with a certain amount of discretion in deciding whether to order interim payments, Banner is quite correct that the Seventh Circuit has recently so held. In *Robbins v. McNicholas Transportation Co.*, the court reasoned:

> Depending on the facts of the particular case, there can be unfairness and injury not likely intended by Congress in compelling interim payments while arbitration of the liability is pending. Congress has provided that interim payments are to be made. It has not expressly required courts to use injunctive powers to compel the payments in every case. We conclude that where the trustees bring an action to compel payment,

pending arbitration, the court should consider the probability of the employer's success in defeating liability before the arbitrator and the impact of the demanded interim payments on the employer and his business.

> Upon considering the employer's probability of success before the arbitrator, and the gravity of any economic hardship caused by payment of installments while awaiting decision, the court should have discretion, similar to that exercised in deciding whether to issue a preliminary injunction, to decline to use its injunctive power to compel payment. Although the statute itself creates a duty to make the payments, and permits resort to the powers of a court, it does not expressly provide that the court must grant an order compelling payment in every instance. Recognition of this degree of discretion alleviates concern that there be unnecessarily harsh and unintended results.

819 F.2d at 685–86 (7th Cir.1987). The Seventh Circuit's decision thus gives this court the freedom to decline to compel interim payments when the court concludes that to order the payments would be unfair or produce results unintended by Congress. Banner argues that this is just such a case, but as we explain below, we cannot agree.

### 1. *Banner's "delinquency"*

Under § 1451(b), "[i]n any action under this section to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution (within the meaning of section 1145 of this title)." Section 1145, in turn, is entitled "Delinquent Contributions," and provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." In view of these provisions, as well as § 1399(c)(2)

and § 1401(d), Central States argues that it is entitled to the relief sought in its motion.

Banner first claims that it would be unfair to require it to make past-due interim payments because the facts and circumstances show that Banner is not "delinquent." Rather, Banner argues, Banner filed a timely declaratory action "raising a threshold issue committed exclusively to court review." Banner Br. at 2, 10. Banner further argues that this court previously noted in *Banner I* that the issue Banner raised was a difficult one and that Banner's position was not frivolous or taken in bad faith. Taking all of the circumstances into account, Banner argues that it cannot now be considered delinquent and required to make "past-due" interim payments.

Banner's argument blurs the distinction between a possible delinquency in contesting its liability and its delinquency in making payments to the pension plan as called for by the statute. We have no quarrel with Banner's assertions that it timely filed its action in this court, that its position was not frivolous and that it did not act in bad faith; indeed, it is for precisely those reasons that we found Banner was not "delinquent" in asserting its rights and contesting its withdrawal liability, and thus held that Banner had not waived its right to initiate arbitration and pursue its challenge to withdrawal liability before the arbitrator. That decision, however, has nothing to do with whether Banner was required to make interim payments to Central States during the pendency of the dispute—the question of payments raises an entirely separate issue.

■ Banner insists that it raised an issue committed exclusively to court review. Such an argument simply ignores this court's holding in *Banner I*. Although Banner *contended* in *Banner I* that the issue was Banner's "employer" status, and thus one that was required to be resolved by a court, we concluded that Banner's contention was without merit, and that the issue was *not* Banner's "employer" status (Banner had admittedly been an employer) but rather, was the accuracy of the plan sponsor's determinations which resulted in the assessment of withdrawal liability against Banner. *See Banner I* at 883. Thus, we held that the issue was *not* a threshold one committed exclusively to court review, but instead was one committed exclusively to arbitral review that should have been placed before the arbitrator from the start. *See id.*[3] Had Banner done what it should have done, it would have been required to commence making payments no later than 60 days after the date of demand and would have been required to continue making those payments until the arbitrator issued a final decision. §§ 1399(c)(2), 1401(d). We can think of no reason why Banner should be excused from making these payments simply because it instead chose to file suit in federal court. The bottom line is that Banner, in our opinion, did not belong in federal court; it belonged in arbitration.[4] Thus, we conclude that Banner is, in fact, "delinquent" in its payments to Central States, and that

---

**3.** It is true, as Banner points out, that the question of arbitrability is one for a court to decide, *see, e.g., AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986); however, this does not change the fact that this court found Banner's purported arbitrability problem to be a red herring. Moreover, as we explain in further detail below, Banner's argument that our granting Central States' motion for past-due payments, liquidated damages, and attorney's fees would in some way "punish" Banner for exercising its right to go to federal court or in some way infringe on that right is without merit. Banner owed the interim payments under the terms of the statute in any event, and the claim for liquidated damages and attorney's fees arose not because Banner filed an action in federal court, but rather solely as a result of Banner's own decision not to make interim payments during the pendency of the dispute. Furthermore, Banner never argued, nor apparently could it argue, that requiring it to make interim payments would be so onerous as to effectively foreclose its ability to proceed in federal court.

**4.** The fact that this court considered the issue to be "a difficult one," *Banner I* at 884, does not change the result. In making that statement, the court meant only that it found the statutory scheme of MPPAA to be complex and the applicable provisions of MPPAA to be somewhat ambiguous or unresponsive to the issue raised in this case.

Central States has a right to seek to compel those payments under § 1451.

### 2. The "balance of hardships"

Banner next argues that even if Banner is delinquent in its payments to Central States, this court should decline to order that such payments be made because "the balance of hardships is in Banner's favor." Banner Br. at 12. Banner asserts that it would suffer substantial hardship if Central States' motion were granted. First, Banner recites that the award Central States seeks totals $6 million and that Banner's after-tax earnings for fiscal year 1986 totalled just $6.5 million. Banner then indicates its concern that the mandatory press releases it would be required to issue to its stockholders reporting this news "could have a negative impact on the price of Banner stock, and in any event, could raise what Banner believes to be undue concern in the minds of investors and lenders." Banner Br. at 13.[5] Banner urges that its potential injuries clearly outweigh the effect that denying the motion will have on Central States. Banner interprets the Seventh Circuit's decision in *McNicholas* as providing that, under these circumstances, this court should deny Central States' motion.

■ At the outset, we note that Banner's contentions in its brief as to the hardship it will suffer are not supported by affidavits or any other competent evidence. In addition, much of what Banner argues in its brief is grounded largely on speculation.

Banner argues that the press releases it would be required to issue "*could* have a negative impact on the price of Banner stock," and "*could* raise … undue concern in the minds of investors and lenders." Moreover, Banner's hardship argument appears to us at this point somewhat disingenuous. Throughout the proceedings, Banner has taken the position that it was financially capable of making any payments eventually ordered by this court. At the July 21, 1986 motion call before the court, Banner strenuously argued that we should delay consideration of Central States' request for an order compelling interim payments until we had had an opportunity to review Banner's "employer" status.[6] In support of this position, Banner argued that there was no potential harm in delaying the ruling:

> Finally, your Honor, I don't see any harm here because if you do decide in fact there ought to be interim payments then it will be done retroactively. That has been done in the past. Central States always asks for it.

Banner repeated its assurances of financial stability to this court on March 27, 1987, reminding the court of its statement in July 1986, and further stating:

> If need be, we'll make the representations or we'll sit down with Mr. Brown and assure him that—I don't think there's any concern that Banner will not have the money should it ever be determined that we really owe it.

**5.** We note an apparent inconsistency in Banner's argument. On the one hand, Banner points out that the award sought by Central States almost equals Banner's after-tax earnings for 1986, thus raising an inference that our granting Central States' motion would result in some financial distress for Banner, yet on the other hand, Banner argues that the concern that would be raised in the minds of investors and lenders upon reading the mandatory press releases would be "undue". It seems to us that if the award will result in substantial financial hardship to Banner, then the concerns raised in the minds of Banner's investors and lenders would be quite appropriate.

**6.** Banner makes frequent reference to a statement by the court in July 1986, in which the court indicated: "I am not going to order them

[Banner] to make interim payments if I am not satisfied that they fit all the elements of an employer and otherwise fall under withdrawal, or apparently fall under a withdrawal situation." This statement, of course, was made at a time at which the court had heard briefly from the parties on their respective positions and had read no memoranda (indeed, the purpose of counsel's appearance on that date was to set a briefing schedule). At that time, the court was at least initially persuaded that one issue in the case involved the question whether Banner was an "employer" for purposes of MPPAA. As the parties are well aware, however, after due consideration of the briefs and the applicable law, the court concluded that this was not the issue at all. Thus, Banner's reliance on this court's preliminary assessment of the case is misplaced.

In light of Banner's earlier statements as to its financial condition, and in the absence of supporting evidence that Banner's financial condition has changed,[7] the court finds Banner's current assertion of substantial hardship unpersuasive. *See Robbins v. Pepsi-Cola Metropolitan Bottling Co.*, 636 F.Supp. 641, 684 (N.D.Ill.1986).

Finally, we do not read *McNicholas* as indicating that we are to "balance the hardships" and deny a motion for interim payments if the pension plan cannot present evidence that injury would result from such an order. *See* Banner Br. at 13. Although the court in *McNicholas* did analogize the court's discretion in compelling interim payments to that exercised in determining whether to issue a preliminary injunction, at 685–86 the court made no reference whatsoever to the need for the pension plan to make any showing of injury from a failure to receive interim payments. On the contrary, the court acknowledged that "Congress has provided that interim payments are to be made," and that "the statute itself creates a duty to make the payments, and permits resort to the powers of a court." At 686. The court held only that in making its decision, the district court should consider "the impact of the demanded interim payments on *the employer and his business* 685–86 (emphasis added), and indicated that the court has the discretion to prevent "unnecessarily harsh and unintended results." At 686. Banner has made no competent showing that granting Central States' motion would have a significant impact on Banner; in fact, as we have indicated, Banner has vehemently argued just the opposite throughout the proceedings before this court. Accordingly, the court rejects this argument.

### 3. The Policies of MPPAA

Banner's final argument supporting its contention that this court should exercise its discretion to deny Central States' motion is that the policies underlying MPPAA would not be thwarted by such a decision. Banner points out that it is already making

monthly payments to Central States pursuant to this court's earlier order, and that Central States' financial integrity therefore is not implicated (Banner also notes that Central States is a fund with over $6 billion in assets). Banner further reiterates that this is not a case in which an employer simply ignored its MPPAA obligations and waited for the fund to bring a collection action. Accordingly, Banner reasons, granting Central States' motion "would not advance Congress' goal of discouraging employers from shirking their obligations under the statute." Banner Br. at 14. In sum, Banner apparently argues that Central States' motion would be appropriate if Banner had filed a frivolous lawsuit but that this is not such a case. *See* Banner Br. at 15.

The short answer to Banner's position is that nothing in the statute or in the Seventh Circuit's opinion in *McNicholas* indicates that this court should deny a motion to compel interim payments unless the employer's challenge is frivolous or made in bad faith. As Central States points out, Banner's argument is "at odds with Congress' directive that an employer challenging its withdrawal liability ... must 'pay now, litigate later.'" Central States Rep.Br. at 5 n. 5. *See also Robbins v. Pepsi-Cola Metropolitan Bottling Co.*, 800 F.2d 641, 642 (7th Cir.1986), *aff'g*, 637 F.Supp. 1014 (N.D.Ill.1986). Banner is again attempting to shift the burden to Central States to prove its entitlement to the interim payments. It is true that Central States is the moving party, but it is also true that Central States' entitlement to payment is *already* established by the statute. *See McNicholas*, at 685–86. Central States need not make any additional showing; it is Banner which must come forward to convince the court that it should exercise its discretion to deny the motion. This Banner has not done.

Congress has clearly established the balance it deems appropriate with respect to which party should have use of the money

---

**7.** In fact, at oral argument before this court on June 19, 1987, Banner asserted for yet a third time that it was capable of making the payments, should it be determined that Banner really owes them.

during the pendency of a dispute over withdrawal liability. Banner has presented us with no reason to upset this balance. Accordingly, we reject Banner's first argument that we should exercise our discretion to deny Central States' motion.

### B. Banner's Rights Under McNicholas and the Due Process Clause

Banner argues alternatively that Central States' motion must be denied because an order granting the relief sought would deprive Banner of rights granted to it by the Seventh Circuit in *McNicholas* and would also deprive Banner of its property without due process. We find both arguments unpersuasive.

#### 1. McNicholas

The court in *McNicholas* stated that "where the trustees bring an action to compel payment, pending arbitration, the court should consider the probability of the employer's success in defeating liability before the arbitrator and the impact of the demanded interim payments on the employer and his business." At 685. Banner interprets this statement to require the court in every case to engage in a review of the merits and of the hardship to the employer before ordering interim payments. Banner suggests that our order in *Banner I* compelling prospective interim payments must also be reconsidered, given the *McNicholas* decision.

■ Although the Seventh Circuit's opinion is somewhat unclear on this point, we think that the opinion read as a whole does not support Banner's argument. Rather, we read *McNicholas* to say that in those cases in which there is evidence that the employer will be injured if forced to make interim payments during the pendency of a dispute in arbitration, the court should examine the extent of the injury likely to be inflicted as well as the likelihood that the employer will be successful in arbitration. The facts of *McNicholas* presented just such a case. McNicholas had asserted that compelling the payments would work a severe financial hardship and essentially preclude it from resuming operations. *See* at

882. The Seventh Circuit concluded that under these circumstances, an order compelling payments might result in unfairness and injury not likely intended by Congress, and thus remanded the case to the district court for appropriate factual determinations. Banner, by contrast, has presented no similar evidence of severe financial hardship.

Various portions of the court's opinion in *McNicholas* support our reading that the Seventh Circuit was primarily concerned with the evidence of irreparable injury. For example, in its preliminary discussion of the question whether the court had jurisdiction of an appeal from an order compelling interim payments, the court indicated:

> Because the decision to compel payments beginning July 1, 1985, as well as to refuse to compel immediate payment of installments previously due, had a "serious, perhaps irreparable consequence," subject to effectual challenge only by immediate appeal, the order at least has consequences similar to an injunction and is appealable, by each party, respectively, as an interlocutory grant, in part, and refusal, in part, of an injunction.

At 685. *See also id.* at 685 ("[W]e are of the opinion that a district court has a measure of discretion whether or not to use injunctive power to compel interim payments *in these situations.*" (emphasis added)). Perhaps even more significant, the Seventh Circuit in *McNicholas* noted that "[t]he views of the [Pension Benefit Guaranty] Corporation are entitled to deference because of its responsibility for the enforcement of Title IV of ERISA." At 686. The court then quoted from a portion of the PBGC's *amicus* brief:

> Ordinarily, in the absence of a demonstration that making interim payments would inflict irreparable injury on an employer, a court should enforce the interim payments requirement without examining the merits of the underlying dispute concerning withdrawal liability....

*Id.*

■ In short, we read *McNicholas* to say that where the employer makes a showing that it will be substantially injured if com-

pelled to make interim payments, the court should not feel constrained to ignore this evidence but instead should examine the extent of the harm and the employer's likelihood of success in defeating the pension fund's claim of withdrawal liability in arbitration before deciding whether to order interim payments. However, given the Seventh Circuit's reference to the PBGC *amicus* brief and its acknowledgment that deference to PBGC interpretations is required, we further read *McNicholas* to say that in the *absence* of such a showing of injury to an employer, the court need not, indeed should not, look to the merits of the underlying dispute.[8] We have already explained that Banner has made no such showing. Accordingly, we conclude that Banner has not been deprived of any rights granted to it by *McNicholas,* and we thus reject Banner's argument that *McNicholas* bars an award of past-due interim payments or requires that we vacate our previous order compelling prospective interim payments.

## 2. The Due Process Clause

██ Finally, Banner argues that granting Central States' motion would require Banner to pay approximately $6 million in advance of a hearing on the merits. Such action, Banner insists, constitutes a deprivation of its property without due process. Although Banner contends that the constitutional issues surrounding the making of interim payments have not been "fully addressed" by any court, Banner Br. at 20 n. 19, Central States has supplied numerous citations to cases addressing these very issues. *See, e.g., Keith Fulton & Sons, Inc. v. New England Teamsters and Trucking Industry Pension Fund,* 762 F.2d 1124, 1135–36 (1st Cir.1984), *modified on other grounds,* 762 F.2d 1137 (1st Cir. 1985); *Board of Trustees v. Thompson Building Materials, Inc.,* 749 F.2d 1396, 1404 (9th Cir.1984), *cert. denied,* 471 U.S.

1054, 105 S.Ct. 2116, 85 L.Ed.2d 481 (1985); *Textile Workers Pension Fund v. Standard Dye & Finishing Co.,* 725 F.2d 843, 854 (2d Cir.), *cert. denied,* 467 U.S. 1259, 104 S.Ct. 3554, 82 L.Ed.2d 856 (1984); *Republic Industries, Inc. v. Teamsters Joint Council No. 83,* 718 F.2d 628 (4th Cir. 1983), *cert. denied,* 467 U.S. 1259, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984); *Dorn's Transportation, Inc. v. I.A.M. National Pension Fund,* 578 F.Supp. 1222, 1232–33 (D.D.C. 1984), *aff'd mem.,* 753 F.2d 166 (D.C.Cir. 1985); *Robbins v. Pepsi-Cola Metropolitan Bottling Co.,* 636 F.Supp. 641, 677–79 (N.D.Ill.1986). These courts have considered the due process challenge in great detail and we see no need to repeat those analyses here. It suffices to say that we too are satisfied that the interim payments requirement does not violate the due process clause.[9] Accordingly, we reject this argument as well.

## II. Liquidated Damages and Attorney's Fees

In addition to past-due interim payments, Central States seeks an award of liquidated damages and attorney's fees. Central States' request is based upon § 1132(g)(2), which provides:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court *shall* award the plan—
>
> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of—
>
> (i) interest on the unpaid contributions, or
>
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under

---

**8.** We further note that although the *McNicholas* court did not expressly decide the issue, it did observe that "it seems logical that if the district court decides to compel interim payments, it would also compel immediate payment of past due installments." At. 686.

**9.** We have considered Banner's citation to *Brock v. Roadway Express, Inc.,* —— U.S. ——, 107 S.Ct. 1740, 95 L.Ed.2d 239 (1987) and conclude that it does not require a different result in this case. *See* Central States Rep.Br. at 13–14.

Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

(emphasis added).

Banner argues that such an award is inappropriate, again indicating primarily that the position it has taken in this lawsuit is not frivolous and is taken in good faith, and that granting Central States' motion would not advance the policies of MPPAA. Thus, Banner contends that it should not be subjected to these statutory penalties, and asks that we deny the request.

 Banner's assertions might be relevant if this court had the discretion to deny Central States' motion for liquidated damages and attorney's fees; however, the language of the statute makes clear that once the court determines that Central States is entitled to interim payments, the court is required to award the plan liquidated damages as well as attorney's fees. Central States has referred the court to several cases in which the courts considering § 1132(g)(2) have concluded that its provisions are mandatory, not discretionary. *See, e.g., United Retail & Wholesale Employees Teamsters Union Local No. 115 Pension Plan v. Yahn & McDonnell, Inc.,* 787 F.2d 128, 134–35 (3d Cir.1986), *aff'd by an equally divided Court,* —— U.S. ——, 107 S.Ct. 2171, 95 L.Ed.2d 692 (1987); *Central States, Southeast and Southwest Areas Pension Fund v. The Rymer Co.,* No. 86 C 3702, mem. op. at 7–8 (N.D.Ill. Apr. 10, 1987) [Available on WESTLAW, DCT database]; *Connors v. Brady-Cline Coal Co.,* —— F.Supp. ——, No. 85–377, mem. op. at 10–12 (D.D.C. Mar. 31, 1987). Banner has cited nothing to the contrary. Accordingly, we conclude that Central States' request for liquidated damages and attorney's fees must be and is granted.[10]

### Conclusion

For all the foregoing reasons, Central States' motion for award of past-due interim payments, interest, liquidated damages and attorney's fees is granted. Judgment will be entered upon submission by Central States of documentation of the appropriate amount.

---

**10.** Banner pointed out at oral argument that the amount of liquidated damages increased substantially while the motions were pending in this court, and implies that part of the reason for this increase was that Banner was relying on this court's refusal to order it to make interim payments to Central States when Central States requested such an order in July 1986. *See* note 5 *supra.* However, the fact that the court declined to enter an order compelling interim payments does not in any way excuse Banner from its obligation to make payments required by the statute. Central States was not able to force Banner to make the payments without the court order since the statutory provisions are not self-enforcing, but by not making the payments, Banner ran the risk that this court ultimately would find that such payments should have been made and that the consequences for its failure to pay would increase commensurately with the length of time Central States had to wait. Banner could have avoided the increased penalty (in fact, Banner could have avoided *any* penalty) by making the payments as the schedule required, subject to being refunded to Banner if Banner ultimately prevailed.