The FLYING TIGER LINE, INC.,
et al., Plaintiffs,

v.

CENTRAL STATES, SOUTHEAST AND
SOUTHWEST AREAS PENSION
FUND, et al., Defendants.

Civ. A. No. 86–304–CMW.

United States District Court,
D. Delaware.

Feb. 6, 1989.

R. Franklin Balotti, Jesse A. Finkelstein and William W. Bowser of Richards, Layton & Finger, Wilmington, Del. (Peter A. Gold and Robert G. Haas of Blank, Rome, Comisky & McCauley, Philadelphia, Pa., of counsel), and Douglas D. Broadwater and Richard Liebeskind, Jr. of Cravath, Swaine & Moore, New York City, for plaintiffs.

David McBride and Barry Willoughby of Young, Conaway, Stargatt & Taylor, Wilmington, Del. (Thomas W. Jennings and Kent Cprek of Sagot & Jennings, Philadelphia, Pa., of counsel), for defendants.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

 This action involves issues of withdrawal liability, arbitrability and interim payments under the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381–1461. The plaintiffs, The Flying Tiger Line, Inc., Tiger International, Inc. and Warren Transport, Inc. (collectively "Tiger"), filed suit in this Court in July 1986 seeking declaratory and injunctive relief. The filing of the action was triggered by the March 1986 bankruptcy of Hall's Motor Transit Co. ("Hall's"), a company which at one time was a subsidiary of Tiger International, Inc. Upon its bankruptcy, Hall's stopped making contributions to a number of multiemployer pension plans to which it had previously contributed. Anticipating that several of these pension plans would assert that Tiger was jointly and severally liable for Hall's withdrawal liability,[1] Tiger filed this declaratory judgment action against a number of pension funds. In Count I of its complaint, Tiger sought a declaration that it was not liable for any withdrawal liability that might be owed to the plans by Hall's, and also sought an order enjoining the plans from asserting claims for such liability against Tiger.[2]

One of the funds to which Hall's contributed was the Teamsters Pension Trust Fund of Philadelphia and Vicinity ("Philadelphia Fund" or "Fund"), an original defendant in this action. By the end of 1987, Hall's ceased all operations covered by the Philadelphia Fund, thus causing a "withdrawal" from the Fund. On January 20,

---

1. "Withdrawal liability" refers to an amount owed to a pension plan by an employer that terminates or reduces its contributions to the plan. *Banner Industries v. Central States Pension Fund,* 657 F.Supp. 875, 876 n. 1 (N.D.Ill. 1987). The withdrawal liability is the amount determined to be the allocable share of unfunded vested benefits at the time of the employer's withdrawal, subject to certain adjustments. *Id.* (citing 29 U.S.C. §§ 1381, 1391). Unfunded vested benefits are calculated as the difference between the present value of vested benefits and the current value of the plan's assets. *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 725, 104 S.Ct. 2709, 2715, 81 L.Ed.2d 601 (1984).

2. In Counts II and III, Tiger's complaint alleged that provisions of MPPAA are unconstitutional on their face and as applied. On October 17, 1986, this Court stayed consideration of Tiger's constitutional claims, and those issues are not considered here.

1988, the Philadelphia Fund issued a notice and demand for payment of withdrawal liability to Tiger pursuant to 29 U.S.C. §§ 1382 and 1399, asserting that Tiger and Hall's collectively were liable for more than $2 million in withdrawal liability. The Philadelphia Fund based its demand on, *inter alia*, the fact that Hall's and Tiger were previously under common control. The specific grounds of liability asserted is a matter of dispute, as explained more fully *infra.*

All of the other defendant pension funds have been dismissed by reason of either settlement or lack of a withdrawal liability claim. The Philadelphia Fund is the only remaining defendant in this action, and it continues to assert a MPPAA withdrawal liability claim against Hall's and Tiger.

On March 23, 1988, Tiger moved for partial summary judgment, alleging that it was not liable to the Philadelphia Fund for withdrawal liability. Specifically, Tiger argues that the only basis of liability asserted against it is the Philadelphia Fund's "accrual" theory,[3] a theory that Tiger alleges is invalid as a matter of law. On May 9, 1988, the Philadelphia Fund also moved for partial summary judgment. The Philadelphia Fund seeks an order compelling interim payments by Tiger under 29 U.S.C. § 1399(c)(2) pending completion of review and arbitration under 29 U.S.C. §§ 1399 and 1401. Additionally, the Fund seeks an order staying or dismissing this action by reason of arbitrability.

The case is thus before this Court on cross motions for summary judgment. Jurisdiction is proper pursuant to 29 U.S.C. § 1451 and 28 U.S.C. § 1331. For the reasons stated herein, the Court will deny Tiger's motion—the Court declines to rule on the Philadelphia Fund's "accrual" theory as a matter of law, and directs that arbitration proceed on both the Fund's "evade or avoid" claim under 29 U.S.C. § 1392(c) and the accrual theory. As to the Philadelphia Fund's motion, that motion is granted, and Tiger is ordered to commence making interim payments to the Fund pending completion of arbitration.

## I. OVERVIEW OF MPPAA[4]

In enacting the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, Congress established funding and vesting standards for private pension plans. Congress enacted the statute because it was concerned that employees covered by pension plans were being deprived of anticipated benefits because of employer underfunding of those plans. *H.C. Elliott, Inc. v. Carpenters Pension Tr. Fund*, 859 F.2d 808, 810 (9th Cir.1988) (citing *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 361–62, 100 S.Ct. 1723, 1726–27, 64 L.Ed.2d 354 (1980)). Under the statute, employers may make contributions to one or more pension plans on behalf of all their employees who belong to a participating union. *Flying Tiger Line v. Teamsters Pension Tr. Fund*, 830 F.2d 1241, 1243 (3d Cir.1987). Many pension funds are thus multiemployer plans that receive contributions from a number of employers.

Under the initial ERISA framework, contributing employers who withdrew from a multiemployer plan often incurred no liability while ridding themselves of a heavy financial burden, at the expense of those employers who stayed with the plan. *Teamsters Pension Tr. Fund v. Central*

---

**3.** For lack of a better label, the Fund's novel theory will be referred to here as the "accrual theory." In essence, the Fund argues, under its application of 29 U.S.C. §§ 1398 and 1362(d), that any business which was an employer or member of a control group as defined under MPPAA must be held accountable for a contingent withdrawal liability that accrued during the time period in which it was an employer or member of the control group. The Fund suggests that this accrued withdrawal liability does not become payable immediately upon a change of corporate structure. Rather, the liability is deferred as long as the new corporate entity contributes to the pension plan. *See Teamsters Pension Tr. Fund v. Central Michigan Trucking*, 857 F.2d 1107, 1108–09 (6th Cir.1988).

**4.** This section, and the following section involving the facts, are essentially adopted from Judge Higginbotham's well-reasoned and thorough opinion in this case. *See Flying Tiger Line v. Teamsters Pension Tr. Fund*, 830 F.2d 1241, 1243–47 (3d Cir.1987).

*Michigan Trucking,* 698 F.Supp. 698, 700 (W.D.Mich.1987). MPPAA was enacted to remedy this situation and to reduce the incentive for employers to terminate their affiliation with multiemployer pension plans. *Elliot,* 859 F.2d at 810. The statute was intended to make it onerous and costly for them to withdraw. H.R. No. 869, 96th Cong., 2d Sess., pt. 1, at 67, *reprinted in* 1980 U.S.Code Cong. & Admin.News 2918, 2935. To accomplish this purpose, MPPAA requires that employers withdrawing from multiemployer pension plans continue funding a proportionate share of the plan's unfunded benefit obligations upon withdrawal. *Central Michigan,* 698 F.Supp. at 700. Withdrawal liability is defined in the statute as the employer's adjusted "allocable amount of unfunded vested benefits." 29 U.S.C. § 1381(b)(1).

Several MPPAA provisions are relevant to this litigation. The Act requires that "all ... trades or businesses (whether or not incorporated) [that] are under common control", as defined in regulations issued by the Pension Benefit Guaranty Corporation ("PBGC"), "shall be treated ... as a single employer." 29 U.S.C. § 1301(b)(1). Because a controlled group is to be treated as a single employer, each member of the group is liable for the withdrawal of any other member of the group. *Flying Tiger,* 830 F.2d at 1244.

Under § 1383, a complete withdrawal from a multiemployer plan occurs when an employer "(1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan." In determining whether a withdrawal has occurred, MPPAA provides that any transaction designed to "evade or avoid" withdrawal liability should be ignored: "[i]f a principal purpose of any transaction is to evade or avoid liability under this part, this part shall be applied (and liability shall be determined and collected) without regard to such transaction." 29 U.S.C. § 1392(c). Also, an employer shall not be considered to have withdrawn from a plan solely because "an employer ceases to exist by reason of ... a change in corporate structure described in section 1362(d) of this title ... if the change causes no interruption in employer contributions or obligations to contribute under the plan...." 29 U.S.C. § 1398.[5] In applying this section, "a successor or parent corporation or other entity resulting from any such change shall be considered the original employer." *Id.*

MPPAA's statutory scheme intends to provide for the quick and informal resolution of withdrawal liability disputes. *See Flying Tiger,* 830 F.2d at 1244. The trustees of a pension plan initiate the process for determining and collecting withdrawal liability. The Act initially requires a plan's trustees to determine whether a withdraw-

---

**5.** Section 1398 states in full:

Notwithstanding any other provision of this part, an employer shall not be considered to have withdrawn from a plan solely because—
(1) an employer ceases to exist by reason of—
  (A) a change in corporate structure described in section 1362(d) of this title, or
  (B) a change to an unincorporated
form of business enterprise, if the change causes no interruption in employer contributions or obligations to contribute under the plan, or
(2) an employer suspends contributions under the plan during a labor dispute involving employees.
For purposes of this part, a successor or parent corporation or other entity resulting from any such change shall be considered the original employer.
29 U.S.C. § 1398.
Section 1362(d) provided:

For purposes of this section the following rules apply in the case of certain corporate reorganizations:
  (1) If an employer ceases to exist by reason of a reorganization which involves a mere change in identity, form, or place of organization, however effected, a successor corporation resulting from such reorganization shall be treated as the employer to whom this section applies.
  (2) If an employer ceases to exist by reason of a liquidation into a parent corporation, the parent corporation shall be treated as the employer to whom this section applies.
  (3) If an employer ceases to exist by reason of a merger, consolidation, or division, the successor corporation or corporations shall be treated as the employer to whom this section applies.
29 U.S.C. § 1362(d) (1985). This section has since been amended. For the current version, *see* 29 U.S.C. § 1362(d) (West Supp.1988).

al has occurred. 29 U.S.C. §§ 1382(1), 1399(b)(1)(A)(i). The date of a complete withdrawal is "the date of the cessation of the obligation to contribute or the cessation of covered operations." 29 U.S.C. § 1383(e). When the trustees determine a withdrawal has taken place, they must then notify the employer of the amount of liability and demand payment in accordance with an amortization schedule. 29 U.S.C. §§ 1382(2), 1382(3), 1399(b)(1)(B). Within 90 days of receiving notice of asserted withdrawal liability, the employer may ask the trustees to conduct a reasonable "review" of the computed liability. 29 U.S.C. § 1399(b)(2)(A)(i).

If a dispute remains, either party may initiate arbitration proceedings within specified time periods. Specifically, MPPAA provides that: "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of ... title [29] shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1). Finally, "[u]pon completion of the arbitration proceedings in favor of one of the parties," MPPAA permits "any party thereto" to bring an action "to enforce, vacate or modify the arbitrator's award" in the appropriate federal district court. 29 U.S.C. § 1401(b)(2).

The commencement of payments of withdrawal liability need not await completion of review or an arbitrator's final decision. Regardless of "any request for review or appeal of determinations of the amount of such liability or of the schedule", the employer must begin making interim payments of withdrawal liability in accordance with the plan's schedule within 60 days of notice of liability. 29 U.S.C. § 1399(c)(2).[6] The statute provides for "necessary adjustments in subsequent payments for overpayments or underpayments arising out of the decision of the arbitrator with respect to the determination." 29 U.S.C. § 1401(d).[7]

## II. BACKGROUND OF THIS DISPUTE

Plaintiff Tiger International, Inc. is a Delaware holding company operating through its subsidiaries—which include plaintiffs The Flying Tiger Line, Inc. and Warren Transport, Inc.—in the air cargo, transportation and trucking businesses. On January 2, 1980, Tiger acquired 100% of the stock of Hall's, a large interstate trucking company. Pursuant to collective bargaining agreements, Hall's had contributed for many years until early 1986 to a number of multiemployer pension plans on behalf of most of its approximately 3,500 employees. Hall's incurred substantial operating losses each year from 1981 through 1984, despite extensive financial support from Tiger during that period.

The parties do not dispute that Tiger and Hall's were under common control until 1985. On January 7, 1985, Tiger sold 75% of its Hall's stock to Hall's Acquisition Corporation ("HAC"), a corporation wholly owned by Alvin Bodford, Hall's Chief Financial Officer. In consideration for the stock it received in this deal, HAC gave Tiger a $10.5 million promissory note that memorialized Hall's preexisting indebtedness to Tiger. To secure this note, Tiger received a blanket subordinated security interest in certain real and personal proper-

---

**6.** Section 1399(c)(2) provides:
   Withdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor under subsection (b)(1) of this section beginning no later than 60 days after the date of the demand notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule.
   29 U.S.C. § 1399(c)(2).

**7.** Section 1401(d) provides:
   Payments shall be made by an employer in accordance with the determinations made under this part until the arbitrator issues a final decision with respect to the determination submitted for arbitration, with any necessary adjustments in subsequent payments for overpayments or underpayments arising out of the decision of the arbitrator with respect to the determination. If the employer fails to make timely payment in accordance with such final decision, the employer shall be treated as being delinquent in the making of a contribution required under the plan (within the meaning of section 1145 of this title).
   29 U.S.C. § 1401(d).

ty of Hall's. Tiger retained a 25% equity interest in Hall's.

Upon becoming the principal owner of Hall's, HAC agreed to honor Hall's obligations to contribute to various multiemployer pension plans. Additionally, as part of its sales agreement with Tiger, HAC explicitly assumed full legal responsibility for any withdrawal liability that Hall's and/or Tiger might incur in the future.

Hall's financial difficulties continued. In late 1985, Tiger agreed to transfer its remaining 25% interest in Hall's to HAC for no consideration. Tiger also agreed to restructure the $10.5 million promissory note and to release its lien on Hall's assets in an effort to help Hall's obtain additional financing. When Hall's was unable to obtain more financing, it filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101–1174, on March 10, 1986. Prior to that date, Hall's continued to participate fully in its multiemployer pension plans and to make contributions to all those plans.

Upon filing its bankruptcy petition, Hall's severely cut back its operations and stopped making its contributions to the multiemployer pension plans. In Hall's bankruptcy proceedings, twelve of these plans asserted MPPAA withdrawal liability claims aggregating more than $36 million. At approximately the same time, Tiger's management was informed that several of Hall's multiemployer pension plans intended to assert that Tiger was jointly and severally liable for Hall's withdrawal liability.

Tiger and its subsidiaries filed this suit on July 3, 1986. The plans moved to dismiss Tiger's complaint for lack of subject matter jurisdiction, principally on the ground that all disputes concerning MPPAA withdrawal liability must be resolved by plan trustee determinations, trustee review and MPPAA arbitration before appeal to a federal district court. The Philadelphia Fund filed an answer and counterclaim on August 8, 1986, seeking a declaration that Tiger is liable for Hall's alleged withdrawal liability. On September 12, 1986, this Court denied the motions to dismiss and ruled that "the Court ... will decide the question of Tiger's status under MPPAA in relation to Hall's alleged withdrawal liability." [8] *Flying Tiger Line v. Central States, Southwest & Southeast Areas Pension Fund,* No. 86–304, mem.op. at 17–18 (D.Del. Sept. 12, 1986).

The plans thereafter moved for reconsideration. On October 17, 1986, this Court vacated its September 12th order, holding that "any further consideration of Count I is stayed pending arbitration." *Flying Tiger Line v. Central States, Southwest & Southeast Areas Pension Fund,* 659 F.Supp. 13, 15 (D.Del.1986). The Court found that Tiger's status as an employer could be decided only by addressing the question of whether Tiger's January 1985 sale of Hall's to HAC was designed to evade or avoid withdrawal liability, pursuant to § 1392(c).[9] The district court identified the need for factual determinations on this issue, and held that those findings should be made by an arbitrator in the first instance. *Flying Tiger,* 659 F.Supp. at 17. On appeal, the Third Circuit affirmed, holding that arbitration is the appropriate method to resolve a dispute over a pension plan trustees' determination that the principal purpose of a transaction is to evade or avoid withdrawal liability. *Flying Tiger Line v. Teamsters Pension Tr. Fund,* 830

---

**8.** The question of Tiger's status concerned whether Tiger was part of the Hall's control group on the date Hall's withdrew from the pension funds. *Flying Tiger Line v. Central States, Southwest and Southeast Areas Pension Fund,* 659 F.Supp. 13, 15 n. 2 (D.Del.1986).

**9.** The Central States, Southwest and Southeast Areas Pension Fund ("Central States") had previously raised the evade-or-avoid issue when it notified Tiger that the trustees had determined pursuant to § 1392(c) that a principal purpose of the Hall's sale was to evade or avoid withdrawal liability. 830 F.2d at 1245–46. However, the fact that Central States properly raised the evade-or-avoid issue against Tiger did not obviate the need for the trustees of the other funds to make their own determinations under 29 U.S.C. §§ 1382 and 1399(b)(1).

**1284**

F.2d 1241, 1243 (3d Cir.1987).[10]

As noted *supra*, the Teamsters Pension Trust Fund of Philadelphia and Vicinity ("Philadelphia Fund") is the only remaining defendant in this action. On January 20, 1988, the trustees of the Philadelphia Fund issued a notice and demand for payment of withdrawal liability to Tiger pursuant to §§ 1382 and 1399. The Philadelphia Fund asserted that Tiger, together with Hall's, was liable for more than $2 million in withdrawal liability, as calculated under the "presumptive" allocation method.[11]

The content of the Philadelphia Fund's demand is a matter of dispute, as illustrated more fully *infra*. The Fund's January 20th letter stated, in part:

> We have determined that you were under common control with Hall's Motor Transit Company in the period from September 26, 1980 to at least the date of a claimed "corporate reorganization" by division under Section 4218 of the Act. Section 4218 of the Act provides that the successor in a corporate reorganization will be treated as the original employer. The successor in a division is defined by reference to Section 4062(d) of ERISA (as in effect in 1980) to encompass all corporations or employers resulting from the division. As part of a successor to the employer resulting from a claimed "division" of the former group of trades or businesses under common control, you remain an "employer" liable for unamortized withdrawal liability incurred during the period of common control.

The Fund's demand letter further stated that the alleged withdrawal liability was incurred "under the statute and 'presumptive method'" in the period September 26, 1980 to 1984 and that "[t]his moots the

issue of a potential continuation of common control past January, 1985." However, the Fund also stated that, based on available information, it "would otherwise determine that common control continued to the date of withdrawal by reason of either actual or constructive ownership of Hall's or Section 4212(c) [29 U.S.C. § 1392(c)] of the Act."

## III. ANALYSIS

### A. Tiger's Motion

In its Motion for Partial Summary Judgment, Tiger asserts that the sole basis of liability claimed in the Fund's January 20th demand letter is the Fund's novel "accrual" theory. The gist of Tiger's motion is that the Fund's accrual theory is invalid as a matter of law and that, because the accrual theory is the only basis of liability asserted against Tiger, Tiger is entitled to summary judgment. Of course, the Fund reads the demand letter differently. It argues that the letter contained three alternative grounds of liability: liability as an "original employer" under 29 U.S.C. § 1398 (accrual theory), liability as part of a continuing control group under 29 U.S.C. § 1301(b) or liability by reason of a transaction to "evade or avoid" withdrawal liability under 29 U.S.C. § 1392(c).

#### 1. Asserted Bases of Liability

The initial question for the Court on Tiger's motion is, therefore, the asserted basis or bases of liability contained in the Fund's demand letter of January 20. Two particular sections of MPPAA are of guidance. Section 1382 states:

> When an employer withdraws from a multiemployer plan, the plan sponsor, in accordance with this part, shall—

---

**10.** The District Court had certified the following question for appeal:

> May a corporation that legitimately believes its status as a MPPAA "employer" is doubtful have that issue resolved by a federal court in a timely declaratory action, wherein the federal district court will determine the legal and factual issues necessary for a determination that the corporation is subject to MPPAA liability and procedures, or must the issue of MPPAA applicability and liability instead be determined by a MPPAA arbitrator?

*Flying Tiger Line v. Central States, Southwest & Southeast Areas Pension Fund,* No. 86–304, mem. order ¶ 1 (D.Del. Dec. 4, 1986) [Available on WESTLAW, DCT database].

**11.** The "presumptive method" is one of four statutory mechanisms for the calculation of withdrawal liability. *See* 29 U.S.C. § 1391(b). A plan may by amendment choose one of the alternative formulas; in the absence of such an amendment, the presumptive method applies. J. Mamorsky, Employee Benefits Law 9–39 (1986).

(1) determine the amount of the employer's withdrawal liability,

(2) notify the employer of the amount of the withdrawal liability, and

(3) collect the amount of the withdrawal liability from the employer.

29 U.S.C. § 1382.

Section 1399(b)(1) states:

(1) As soon as practicable after an employer's complete or partial withdrawal, the plan sponsor shall—

(A) notify the employer of—

(i) the amount of the liability, and

(ii) the schedule for liability payments, and

(B) demand payment in accordance with the schedule.

29 U.S.C. § 1399(b)(1).

Notably, neither of these sections state the specificity with which a demand on an allegedly withdrawing employer need be made. Tiger argues that the plan sponsor (trustee) must specifically determine the bases of liability and notify the employer of these bases in the demand letter. Counsel for the Fund conceded at oral argument that the January 20th letter may have been ambiguous as to the asserted grounds of liability, but argued that the Fund should not be precluded from raising alternative theories of liability merely because those alternative theories were not explicitly stated in the demand letter.

Tiger reads the "would otherwise determine" language in the Fund's demand letter to say that the Fund did not at that time make a determination as to alternative grounds of liability. Tiger argues that the Fund must make a formal determination of each ground of liability and communicate that determination to the alleged employer (Tiger) before the Fund can assert a particular theory of liability.

■ The Court finds Tiger's suggested reading of MPPAA overly restrictive. Neither § 1382 nor § 1399(b)(1) contain language that would require the detailed assertion of the bases of liability suggested by Tiger. Tiger cites no caselaw that would support such a requirement. Moreover, an employer under MPPAA may, within 90 days after receipt of the demand letter, ask the pension fund "to review any specific matter relating to the determination of the employer's liability and the schedule of payments." 29 U.S.C. § 1399(b)(2)(A)(i). This provides a procedure whereby an employer can seek clarification of any perceived ambiguity of the demand letter. The Court thus finds that the Fund's demand letter complied with MPPAA and was sufficient to put Tiger on notice as to the alternative bases of liability.

This conclusion is consistent with the purpose of the §§ 1382 and 1399(b)(1) demand requirement. The legislative history of MPPAA's demand requirement is scant. *See, e.g.,* H.R.Rep. No. 869, 96th Cong., 2d Sess., pt. 1, at 84, *reprinted in* 1980 U.S. Code Cong. & Admin.News 2918, 2952. A common-sense reading of MPPAA suggests that a principal purpose of the demand requirement is to put the employer on notice of the asserted bases of liability. The Philadelphia Fund's letter certainly accomplished that. Specifically, the letter cited to "Section 4212(c)", MPPAA's evade-or-avoid provision, codified at 29 U.S.C. § 1392(c). In light of this reference and the fact that the evade-or-avoid dispute has been an issue throughout this litigation (albeit raised by other funds), the Court finds Tiger received adequate notice that the Fund was asserting at least both the accrual theory and the evade-or-avoid claim.[12]

■ Although the Court finds that the original January 20, 1988, demand letter adequately raised alternative theories of liability, the dispute as to the substance of the Fund's demand has since been mooted. At oral argument on November 23, 1988, the Court granted permission to the Fund's counsel to submit an affidavit and accom-

---

**12.** This is not to say that ambiguous language in a demand letter will always survive judicial scrutiny. Rather, the Court merely declines to engage in a hypertechnical reading of MPPAA and the Fund's demand letter. The Court believes that a reasonable recipient of the Fund's January 20, 1988 letter would interpret the letter as principally asserting the accrual theory and alternatively asserting the evade-or-avoid and control group theories.

panying exhibits to clarify any ambiguity of the demand. The Fund's counsel submitted an affidavit on December 15, 1988, and included a letter from the Fund administrator to a representative of Tiger. That letter, dated December 2, 1988, and termed a "precautionary re-demand" by the Fund, stated that "the Fund and its trustees now explicitly demand payment of liability on alternative grounds under 29 U.S.C. §§ 1301(b), 1392(c) or 1398...."

The Court granted Tiger leave to respond. It did so on January 25, 1989, by letter from Tiger's counsel to the Court. In substance, that letter reiterates Tiger's arguments from its briefs. As to the evade-or-avoid claim, Tiger argues that the Fund has made no showing of any admissible evidence to support its assertion. However, as explained more fully *infra,* the Court finds that a review of the merits of the underlying evade-or-avoid dispute is unnecessary absent evidence of irreparable harm to Tiger.[13]

### 2. Arbitrability of Claims

The next issue on Tiger's motion involves the arbitrability of the claims asserted by the Fund. The Third Circuit has stated unequivocally that arbitration is the appropriate forum to initially resolve a dispute over a pension plan's determination that the principal purpose of a transaction is to evade or avoid withdrawal liability. *Flying Tiger,* 830 F.2d at 1243. A closer question, though, is whether a dispute over the validity of the accrual theory should in the first instance be heard by a court or by an arbitrator in a case where there is also an evade-or-avoid issue.

Tiger argues that the validity of the accrual theory of withdrawal liability asserted by the Fund is a question of pure statutory interpretation that should be determined as a matter of law at the summary judgment stage. In other words, Tiger asserts that it is proper for this Court to resolve the validity of the accrual theory prior to arbitration of the evade-or-avoid issue.

The Fund, conversely, argues that all three of its asserted bases of liability are appropriate issues for arbitration. It relies chiefly on the Third Circuit's decision in *Flying Tiger.*[14] The Fund reads Judge Higginbotham's opinion as directing arbitration of *all* MPPAA disputes, even questions of statutory interpretation. It asserts that the essence of that opinion is "a compelling prohibition of piecemeal litigation of withdrawal liability cases in which one or more issues may involve either issues of fact or law committed to arbitration."

An answer to this question of arbitrability requires a careful reading of the Third Circuit's *Flying Tiger* decision and the recent post-*Flying Tiger* opinions. The Court first looks to the statute. MPPAA states that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1). There are

---

**13.** Whatever the merits of the evade-or-avoid issue, there is at least a genuine factual dispute surrounding the 1985 transaction. *Flying Tiger Line v. Central States, Southwest and Southeast Areas Pension Fund,* 659 F.Supp. 13, 17 (D.Del. 1986). Additionally, the Court notes the following statement from the Third Circuit's opinion in this case: "[W]e take judicial notice of the fact that actors in our free enterprise system are not primarily guided by their eleemosynary [charitable] impulses; when a large corporation relinquishes for no consideration at all its remaining 25% interest in another corporation, a unique event has occurred." *Flying Tiger Line v. Teamsters Pension Tr. Fund,* 830 F.2d 1241, 1254 n. 21 (3d Cir.1987).

**14.** At the time of briefing and oral argument in this case, the parties did not have the benefit of the Third Circuit's decision in *Colteryahn Dairy, Inc. v. Western Pennsylvania Teamsters and Employers Pension Fund,* 847 F.2d 113 (3d Cir. 1988), *cert. denied,* ── U.S. ──, 109 S.Ct. 865, 102 L.Ed.2d 989 (1989). In that case the court held that the employer was not required to submit to arbitration its claim that it was fraudulently induced to accede to a merger, but the court directed that arbitration proceed on the employer's claim that payments made at the time of the merger be counted as "contributions" for the purposes of apportioning withdrawal liability. *Id.* at 118–24. The court also reiterated *Flying Tiger's* endorsement of MPPAA's arbitrate-first rule. *Id.* at 122–23.

several narrowly cabined exceptions in this Circuit to MPPAA's arbitrate-first rule. *Flying Tiger*, 830 F.2d at 1252. These exceptions apply in extraordinary "circumstances where the arbitral process would be either inappropriate or futile." *Id.*

First, the plaintiff may bypass arbitration if forcing a plaintiff to follow a designated administrative procedure would cause the plaintiff irreparable harm. *Id.* at 1252–53 (citing *Republic Indus. v. Central Pa. Teamsters Pension Fund*, 693 F.2d 290, 293 (3d Cir.1982)). Tiger has come forward with no evidence suggesting that it will suffer irreparable harm if the issue of the accrual theory first goes to an arbitrator. It has suggested that it will face irreparable injury if it is compelled to make interim payments. However, "the possibility that a court may in the future deny a fund's request to compel payments, based upon an employer's demonstration of irreparable injury and the court's preliminary review of the merits, does not determine whether the underlying dispute must, by law, be arbitrated." *Id.* at 1253. Absent any evidence of irreparable injury due to arbitration of this issue, this exception is inapplicable.

Second, arbitration may be bypassed in the rare case where the question is "solely one of statutory interpretation ... [and t]he resolution of th[e] issue does not require any particular expertise on the part of the [arbitrator]...." 830 F.2d at 1253 (citing *McKart v. United States*, 395 U.S. 185, 197–98, 89 S.Ct. 1657, 1665, 23 L.Ed.2d 194 (1969)). Under this second exception to the arbitrate-first rule, Tiger argues that the validity of the accrual theory should be decided by this Court in the first instance because it raises questions of statutory interpretation.

Tiger relies principally on *Dorn's Transp. v. Teamsters Pension Tr. Fund*, 787 F.2d 897 (3d Cir.1986).[15] The dispute in *Dorn's* focused on whether a withdrawal occurred when a contributing employer and principal stockholder sold all of his stock to a corporation that continued to make contributions to the same multiemployer pension plans pursuant to an identical collective bargaining agreement. *Id.* at 901. The chief issue was whether this transaction fell under the statutory exemption of § 1398, which states that a withdrawal has not taken place in case of certain "change[s] in corporate structure." *Id.* at 900. The court reached the merits of this dispute because there was "no disputed issue of material fact" and it was presented with "a rare *case* in which there was no need for the development of a factual record...." *Id.* at 902–03 (emphasis added).

The *Dorn's* court noted several relevant considerations in bypassing arbitration: whether the issue is one in which an arbitrator has a special expertise; whether there is a reasonable possibility that arbitration will moot further proceedings and thus serve the goals of judicial economy; and whether arbitration will help develop a fuller factual record that will assist the district court. *Id.* at 903 (citing *Republic Industries*, 693 F.2d at 295–96); *see also I.A.M. National Pension Fund v. Stockton TRI Industries*, 727 F.2d 1204, 1210 (D.C.Cir.1984).

Notably, *Dorn's* involved undisputed facts and only an issue of statutory interpretation. 787 F.2d at 902–03. The present case differs from *Dorn's*. First, the statutory interpretation issue (accrual theory) in this case involves a determination under § 1398, a MPPAA section that

---

15. In *Dorn's*, the principal stockholder and chief executive officer of Dorn's Transportation, Inc. ("Dorn's") sold all of his stock to Oneida Motor Freight, Inc. ("Oneida"). Oneida offered uninterrupted employment to all of Dorn's former employees. Oneida, pursuant to a collective bargaining agreement that mirrored Dorn's, also made uninterrupted pension contributions on behalf of those employees who accepted its job offer. 787 F.2d at 898. At the time of the stock sale, however, Oneida was "indisputabl[y]"

unaware that Dorn's was trying to avoid MPPAA withdrawal liability. *Id.* at 902. Given these "unusual circumstances," the court determined that § 1392 did not apply to the transaction, concluding that "when the seller enters a transaction to escape liability, but the buyer has no intention of taking subsequent actions that will reduce the payments owing to the Plan, it does not appear that a 'principal purpose of the transaction' as a whole is to escape liability." *Id.*

Congress explicitly reserved for arbitration. Second, because the evade-or-avoid issue has been properly raised, there exists a genuine factual dispute surrounding the bona fides of the 1985 transaction. *See Flying Tiger*, 830 F.2d at 1254. Also, the Third Circuit has construed *Dorn's* as a narrow and fact-specific holding. *See Colteryahn Dairy, Inc. v. Western Pennsylvania Teamsters and Employers Pension Fund*, 847 F.2d 113, 123 n. 17 (3d Cir.1988) (directing arbitration of dispute over whether certain payments made at time of merger should be counted as "contributions" for purpose of apportioning fund's unfunded vested liabilities among members), *cert. denied,* — U.S. —, 109 S.Ct. 865, 102 L.Ed.2d 989 (1989).

Tiger nevertheless argues that, regardless of whether the evade-or-avoid issue has been properly presented, it is appropriate for this Court to decide the validity of the accrual theory as a matter of law. Tiger's position as to arbitrability might be correct if this case involved *only* the issue of the accrual theory, arguably a pure question of statutory interpretation. However, this suit also involves the fact-specific evade-or-avoid issue, a matter clearly for the arbitrator in the first instance.

In light of the clear mandate of § 1401 to arbitrate disputes that arise under §§ 1381 through 1399, the Court cannot parse the accrual theory issue from the rest of this case. To do so would be in effect to issue an advisory opinion on the Fund's novel legal theory and would run counter to the evolving law of MPPAA arbitration in this circuit. *See Colteryahn Dairy*, 847 F.2d at 123–24 n. 17. Indeed, a decision by this Court on the validity of the accrual theory may never be necessary. If an arbitrator determines that a principal purpose of the 1985 transaction was to evade or avoid withdrawal liability, and that determination is affirmed here, then the accrual theory issue would be moot. Contrary to Tiger's assertion, judicial economy is thus not necessarily served by ruling on the accrual theory at this stage of the litigation.

The strong language in *Flying Tiger* favoring arbitration of MPPAA disputes further supports this conclusion. The Third Circuit there noted the "unusual circumstances" of *Dorn's* and the "extreme narrowness" of the holding in that case. 830 F.2d at 1253 n. 19; *see also Colteryahn Dairy*, 847 F.2d at 123 n. 17. The *Flying Tiger* court stated that "when MPPAA provisions earmarked for arbitration are involved in a dispute, questions of statutory interpretation should not alter the forum for dispute resolution," and that "it should be beyond cavil that the existence of an issue of statutory interpretation, standing alone, does not justify bypassing arbitration." *Id.* at 1255 (quoting *I.A.M. National Pension Fund v. Clinton Engines Corp.*, 825 F.2d 415, 418 (D.C.Cir.1987)). Also, the court stated that "[t]he purposes of the arbitration requirement are best served by the parties resorting first to arbitration, even where one of the parties believes the issues are limited to statutory interpretation." *Id.* (quoting *Robbins v. Chipman Trucking, Inc.*, 693 F.Supp. 628 (N.D.Ill.1986).

A number of recent cases considering the issue of whether certain MPPAA disputes are subject to initial resolution by arbitration also mandate that the *entire* dispute between Tiger and the Fund first go to arbitration. In a decision that went even further than *Flying Tiger*, the Sixth Circuit in *Mason and Dixon Tank Lines v. Central States, Southeast and Southwest Areas Pension Fund*, 852 F.2d 156 (6th Cir.1988), directed that the following MPPAA issues had to first go to arbitration: whether an employer has a right to cure partial withdrawal by tendering past-due pension fund contributions; whether a pension fund's calculation of withdrawal liability may include contribution histories of all businesses under common control; whether the statute imposing liability is constitutional as applied to the employer; and whether equitable considerations warrant reducing a withdrawal liability assessment. *Id.* at 163, 166. The *Mason and Dixon* court was unequivocal in its endorsement of the arbitrate-first rule of MPPAA, and it agreed "with a growing number of circuits that questions of statutory construction, standing alone, are not

exempt from arbitration under the MPPAA." *Id.* at 164 (citations omitted). The court specifically rejected Tank Lines' argument that its dispute with Central States merely raised questions of statutory interpretation, which need not be arbitrated. *Id.* at 166.

Courts have increasingly interpreted § 1401(a)(1) to require initial recourse to arbitration. *See, e.g., Chicago Truck Drivers v. Chicago Kansas City Freight Line,* 694 F.Supp. 469, 473–74 (N.D.Ill.1988) (directing arbitration of dispute under § 1384, which states that sale of assets by employer does not result in withdrawal liability as long as sale meets certain conditions); *Bowers v. Compania Peruana De Vapores, S.A.,* 689 F.Supp. 215, 218–19 (S.D. N.Y.1988) (directing arbitration of dispute over whether employer was time-barred from challenging assessment of withdrawal liability).

One case that Tiger cites in support of its argument for an exception to the arbitrate-first rule here merits distinction. *See Teamsters Pension Tr. Fund v. Central Michigan Trucking,* 698 F.Supp. 698 (W.D. Mich.1987), *aff'd.,* 857 F.2d 1107 (6th Cir. 1988).[16] In *Central Michigan,* the plaintiff pension funds sought to collect withdrawal liability from the defendant companies based on the alternative arguments of the accrual theory or the evade-or-avoid issue. 698 F.Supp. at 699. The district court held the accrual theory invalid as a matter of law and remanded for arbitration the evade-or-avoid dispute. *Id.* at 703–04. Despite an agreement by the litigants that the issues surrounding the accrual theory of liability were appropriate for the court in the first instance, the court performed its own search of the record to determine whether genuine issues of material fact existed, and it found that the Funds' theory of liability was "amenable to decision upon the briefs." *Id.* at 699. On appeal, the Sixth Circuit went right to the merits of the accrual theory issue and did not address the question of arbitrability. 857 F.2d at 1107–12.

One could thus read the district court's opinion in *Central Michigan* as standing for the proposition that it is appropriate for a district court to separate the accrual theory from the evade-or-avoid issue in a case where both are raised, and to decide the validity of the accrual theory as a matter of law. To the extent that this is a correct reading of *Central Michigan,* this Court respectfully declines to follow the Western District of Michigan and the Sixth Circuit. The Court finds the Third Circuit's *Flying Tiger* and *Colteryahn Dairy* decisions controlling in this jurisdiction, and it reads those decisions to prohibit piecemeal consideration of statutory MPPAA issues in a case containing an underlying factual dispute. Therefore, this Court expresses no opinion on the merits of the Fund's accrual theory. Summary judgment in favor of Tiger is denied, and arbitration should proceed on the evade-or-avoid dispute as well as the issue of the accrual theory.

## B. The Fund's Motion

In its Motion for Partial Summary Judgment, the Fund seeks an order compelling interim payments by Tiger and staying or dismissing this action by reason of arbitrability. The Fund argues that Tiger must make interim payments notwithstanding Ti-

---

16. In *Central Michigan,* defendant Fuqua Industries, Inc. ("Fuqua") in 1968 acquired 100% of the outstanding stock of Interstate Motor Freight Systems, Inc. ("Interstate"). 857 F.2d at 1108. Fuqua held Interstate as a wholly owned subsidiary until 1980, when Fuqua's Board of Directors authorized the distribution of Interstate common stock to Fuqua common stockholders, thus effecting a stock "spin-off." Upon the stock distribution, Interstate became an independent, publicly held corporation. Interstate's obligation under collective bargaining agreements to make contributions on behalf of certain of its employees to the Fund, the plaintiff, continued after the spin-off. Interstate continued to make uninterrupted contributions until December 1984, when Interstate ceased operations due to financial problems. *Id.*

In early 1985, the Fund assessed withdrawal liability against Interstate and Fuqua. In July 1985, the Fund sued Fuqua, alleging that Fuqua was liable to the Fund for payment of that portion of Interstate's withdrawal liability attributable to the pre-spin-off period (1968–1980) when Fuqua and Interstate were under common control. The Fund also alleged that the 1980 spin-off had as its principal purpose the evasion or avoidance of withdrawal liability. *Id.*

ger's challenge to the withdrawal liability asserted against it. Tiger advances four principal arguments in opposition to the Fund's motion: (1) the sole basis upon which the Fund asserts liability against Tiger—the accrual theory—is invalid as a matter of law; (2) the statute does not require former members of the controlled group such as Tiger to make interim payments, and does not grant pension funds a right to collect payments from such entities; (3) the Court must conduct a preliminary review on the merits, and neither the accrual theory nor the evade-or-avoid allegations are supportable; and (4) construing the statute to require Tiger to make interim payments without a pre-deprivation hearing on the merits would violate Tiger's due process rights.

The Court begins once again with the statute. The MPPAA's interim payment provisions are set forth in 29 U.S.C. §§ 1399(c)(2) and 1401(d). Section 1399(c)(2) provides:

> Withdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor under subsection (b)(1) of this section beginning no later than 60 days after the date of the demand notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule.

29 U.S.C. § 1399(c)(2).

Section 1401(d) provides in part:

> Payments shall be made by an employer in accordance with the determinations made under this part until the arbitrator issues a final decision with respect to the determination submitted for arbitration, with any necessary adjustments in subsequent payments for overpayments or underpayments arising out of the decision of the arbitrator with respect to the determination.

29 U.S.C. § 1401(d).

Significantly, withdrawal liability is payable "notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule." 29 U.S.C. § 1399(c)(2). However, the statute does not specifically say whether withdrawal liability is payable when the alleged employer is contesting its status as an entity responsible for withdrawal liability. The Court thus looks to the intent of the statute and the manner in which it has been interpreted in other cases.

The MPPAA was designed "(1) to protect the interests of participants and beneficiaries in financially distressed multiemployer plans, and (2) ... to ensure benefit security to plan participants." *IUE AFL–CIO Pension Fund v. Barker & Williamson, Inc.*, 788 F.2d 118, 127 (3d Cir.1986) (quoting H.R.Rep. No. 869, 96th Cong., 2d Sess. 71, *reprinted in* 1980 U.S.Code Cong. & Ad. News 2918, 2939). Courts have consistently indicated that ERISA and MPPAA are remedial statutes, and that they should be liberally construed in favor of protecting the participants in employee benefit plans. *See id.* and cases cited therein.

As to the legislative intent behind the MPPAA interim payment provisions in particular, the statute contemplates a "pay now, dispute later" procedure. *Robbins v. Pepsi–Cola Metropolitan Bottling Co.*, 636 F.Supp. 641, 677 (N.D.Ill.1986). The interim payment provisions "reflect Congress' intent to disallow a suspension in contributions to the fund pending the resolution of an employer's dispute over the determination and calculation of withdrawal liability." *Id.* at 680. The intent of Congress was to secure the funds as soon as possible and iron out the details and disputes later. *Marvin Hayes Lines, Inc. v. Central States, Southeast and Southwest Areas Pension Fund*, 814 F.2d 297, 301 (6th Cir.1987) (requiring employer to make interim payments during pendency of arbitration to establish correct date of withdrawal). This legislative intent evinces the balance Congress deems appropriate with respect to which party should have the use of the money during the pendency of a dispute over withdrawal liability. *Banner Industries v. Central States, Southeast and Southwest Areas Pension Fund*, 663 F.Supp. 1292, 1297–98 (N.D.Ill. 1987) ("*Banner II*").

### 1. Multiple Potential Bases of Liability

Tiger asserts that there are four reasons why it should not have to make interim payments. First, it argues that the accrual theory is the sole basis upon which the Fund has asserted withdrawal liability, and that the accrual theory is invalid as a matter of law. This argument is no reason to block interim payments because the Court has determined that the Fund has properly asserted alternative bases of liability.

### 2. "Secondary Entity" Argument

■ Second, Tiger argues that as a former member of the control group it is now a "secondary entity" which cannot be required to make interim payments. Tiger further argues that no cause of action exists under MPPAA to collect interim payments from an entity such as itself. Specifically, Tiger points to the language of 29 U.S.C. § 1399(c)(2), which states that withdrawal liability is payable "notwithstanding any request for review or appeal of the determinations of the amount of such liability or of the schedule", but is silent as to the interim payment liability of a corporation that disputes its status as an entity responsible for withdrawal liability.

Whether a court may compel interim payments from a corporation that disputes its underlying status as an entity responsible for withdrawal liability (as opposed to a dispute over the amount or payment schedule) is an issue of first impression in the Third Circuit. The Third Circuit did not address the issue in *Flying Tiger*. Decisions in this Circuit and elsewhere compel the conclusion that Tiger must make interim payments regardless of the nature of its challenge.

In *Republic Industries v. Central Pa. Teamsters Pension Fund*, 693 F.2d 290 (3d Cir.1982), Republic, the successor in interest to the employer which contributed to a union pension fund until it ceased business operations, brought an action challenging the constitutionality of the withdrawal liability provisions of MPPAA. *Id.* at 291–92. In holding that arbitration was not a prerequisite to judicial review of a constitu-

tional challenge to these provisions, the Third Circuit stated that its decision did "not relieve Republic of its obligation to either make interim payments to the Fund or, under the direction of the district court, to otherwise ensure that such payments will be made to the Fund should litigation be resolved in the Fund's favor." *Id.* at 298. In other words, the court did not allow the company's constitutional challenge to interfere with its interim payment obligation.

In another Third Circuit case, the court explicitly recognized a right of action of a pension fund to collect withdrawal liability payments from an *undisputed* employer pending arbitration proceedings. *See United Retail & Wholesale Employees Teamsters Union Local No. 115 v. Yahn & McDonnell, Inc.*, 787 F.2d 128, 130 (3d Cir.1986). Noting the "strong authority for the proposition that there is a cause of action to collect withdrawal liability payments pending arbitration", the court stated that MPPAA sections explicitly providing for payments pending arbitration would be meaningless if there was no cause of action to enforce them. *Id.* at 132–34. Significantly, however, the *Yahn & McDonnell* court did not address the issue in the context of a *disputed* employer.

At least one other Third Circuit decision can be read to implicitly support the conclusion reached here. *See IUE AFL–CIO Pension Fund v. Barker & Williamson*, 788 F.2d 118 (3d Cir.1986). In *Barker & Williamson*, a question existed as to whether Sentinel Electronics, Inc. was a member of a control group with Barker & Williamson, Inc., which had ceased operations and defaulted on its payments to a pension fund. *Id.* at 121. The court held that both corporations were members of the control group and thus liable for Barker & Williamson's delinquent payment to the pension fund. *Id.* at 126.

In so concluding, the court noted that Sentinel, a potential member of a control group with an employer who withdrew from a multiemployer fund, was required to observe the two statutory requirements of making interim payments, and making a

timely challenge to the liability amount. *Id.* at 129. The court stated that an entity such as Sentinel could request review by the fund and arbitration, and that interim payments to the fund could be made contingent on the outcome of the declaratory judgment action. *Id.* "If the federal court later decided that the corporation was not a member of the controlled group, it could order the fund to return the payments." *Id.* Under our facts, Sentinel is analogous to Tiger, and if an arbitrator and this Court later find that the accrual theory is invalid and that the 1985 transaction was not to evade or avoid liability, the interim payments made by Tiger can be returned.

A decision more directly on point is *Banner Industries v. Central States, Southeast and Southwest Areas Pension Fund,* 657 F.Supp. 875 (N.D.Ill.1987) (*"Banner I"*). In *Banner I,* Banner Industries, Inc. ("Banner") brought a declaratory judgment action against Central States and a number of other pension funds, seeking a declaration that Banner was not liable for any portion of a demand of withdrawal liability. *Id.* at 876. Prior to 1983, Banner had a wholly owned subsidiary, Commercial Lovelance Motor Freight, Inc. ("Commercial"). In March 1983, allegedly in an effort to reverse operating losses of Commercial, Banner established an employee stock ownership plan ("ESOP") and transferred 50.01% of Commercial's stock to the ESOP. *Id.* Commercial continued to make payments to Central States under collective bargaining agreements until 1985 when Commercial ceased operations. *Id.* at 876–77. Central States demanded payment of withdrawal liability from Banner based on the fact that Banner was undisputably an "employer" until at least March 1983, and alternatively on the ground that the ESOP transaction was to evade or avoid withdrawal liability. *Id.* at 879–80.

The chief issue in *Banner I* was whether Banner had to first contest the withdrawal liability assessment in arbitration. *Id.* at 883. After an extensive discussion of *Flying Tiger,* the court held that the appropriate forum for the resolution of *both* disputes was arbitration. *Id.* at 881. However, Central States filed a motion for summary judgment on its claim for interim payments. *Id.* at 885. Banner argued in opposition that the statute requires only "employers" to make interim payments, and that it was not an employer for purposes of determining MPPAA withdrawal liability.. *Id.* The court characterized the underlying issue as the correctness of the plan sponsor's determinations, not Banner's employer status, and it read MPPAA to require that all disputes regarding the plan sponsor's determinations be resolved in arbitration. *Id.* at 883. It thus ordered Banner to begin making interim payments. *Id.*

*Banner I* lends strong support to the Fund's position here. Like in *Banner I,* Tiger was clearly a member of the control group at one time, but now disputes the plan's determinations regarding a theory of liability and a possible evade-or-avoid transaction. Because Tiger was unquestionably an employer until at least 1985, it falls within the statutory language compelling payments from "an employer." *See* 29 U.S.C. § 1401(d). Tiger must continue to make interim payments until the arbitrator issues a final decision, and adjustments can be made at that time for overpayment or underpayment. *See Banner I,* 657 F.Supp. at 885.

Other recent decisions further compel the conclusion that Tiger should make interim payments pending the outcome of arbitration. *See, e.g., Robbins v. McNicholas Transportation Co.,* 819 F.2d 682, 685 (7th Cir.1987) (interim payments due pending arbitration of dispute over whether withdrawal occurred); *Marvin Hayes Lines, Inc. v. Central States, Southeast and Southwest Areas Pension Fund,* 814 F.2d 297, 301 (6th Cir.1987) (interim payments due pending arbitration of dispute over correct date of withdrawal); *Bowers v. Compania Peruana De Vapores, S.A.,* 689 F.Supp. 215, 220 (S.D.N.Y.1988) (entity contesting its status as statutory employer was nevertheless liable for interim payments pending resolution of dispute); *Chicago Truck Drivers v. Chicago Kansas City Freight Line, Inc.,* 694 F.Supp. 469, 474–76 (N.D.Ill.1988) (compelling interim

payments pending arbitration of dispute over application of sale-of-assets exemption, 29 U.S.C. § 1384); *Central States, Southeast and Southwest Areas Pension Fund v. Bay*, 684 F.Supp. 483, 486–88 (E.D. Mich.1988) (compelling interim payments pending arbitration of dispute over who was member of control group at time of withdrawal).

### 3. Review on Merits not Necessary

Tiger's third principal argument on the Fund's motion for interim payments is that MPPAA and the caselaw require a preliminary review on the merits, and that such a review indicates that it is not probable that the Fund will prevail on either the accrual theory or its evade-or-avoid claim. The Fund argues that an entity such as Tiger is only entitled to a preliminary hearing where it can demonstrate irreparable harm to its business as a result of the assessment of withdrawal liability.

The requirement of interim payments under § 1401(d) is not self-enforcing. *Flying Tiger*, 830 F.2d at 1253. Even when a plan succeeds in winning an arbitrator's judgment, it still has to obtain a court order to compel payments. *Id.* A district court has a measure of discretion in deciding whether to order interim payments. *Robbins v. McNicholas Transportation Co.*, 819 F.2d 682, 685 (7th Cir.1987); *accord Central States, Southeast and Southwest Areas Pension Fund v. T.I.M.E.—DC, Inc.*, 826 F.2d 320, 330 (5th Cir.1987); *contra Joyce v. Ace Construction Co.*, No. 87–2136, slip op. at 3–4 (D.D.C. Sept. 20, 1988) [1988 WL 105000].

Admittedly, "there can be unfairness and injury not likely intended by Congress in compelling interim payments while arbitration of the liability is pending." *McNicholas*, 819 F.2d at 685. However, "compelled payment of money, recoverable with inter-est upon later determination of error, is not, in itself, irreparable harm." *Id.*

The *McNicholas* court held that a district court, in considering whether to compel interim payments pending arbitration, "should consider the probability of the employer's success in defeating liability before the arbitrator and the impact of the demanded interim payments on the employer and his business." *Id.* Significantly, the court noted that "[t]he views of the [Pension Benefit Guaranty] Corporation are entitled to deference because of its responsibility for the enforcement of Title IV of ERISA" and quoted a portion of a PBGC *amicus* brief:

> Ordinarily, in the absence of a demonstration that making interim payments would inflict irreparable injury on an employer, a court should enforce the interim payments requirement *without examining the merits of the underlying dispute concerning withdrawal liability....*

819 F.2d at 686 n. 4 (quoting Brief of Amicus Curiae PBGC, *Central States, Southeast & Southwest Areas Pension Fund v. T.I.M.E.—DC, Inc.*, 826 F.2d 320 (5th Cir.1987)).

The *McNicholas* decision is unclear as to whether the court in every case is to engage in a review of the merits and of the hardship to the employer before ordering interim payments.[17] *See Banner Industries, Inc. v. Central States, Southeast and Southwest Areas Pension Fund*, 663 F.Supp. 1292, 1298 (N.D.Ill.1987) ("*Banner II*"). The *Banner II* court, noting the Seventh Circuit's reference in *McNicholas* to the PBGC *amicus* brief, read *McNicholas* to say that "in the *absence* of such a showing of injury to an employer, the court need not, indeed should not, look to the

---

**17.** The *Flying Tiger* opinion was also unclear on this point. *See* 830 F.2d at 1253. The court there stated that "the possibility that a court may in the future deny a fund's request to compel payments, based upon an employer's demonstration of irreparable injury and the court's preliminary review of the merits, does not determine whether the underlying dispute must, by law, be arbitrated." *Id.* Notably, the court cited to the PBGC *amicus* brief filed in the Fifth Circuit. *Id.* at 1253 n. 18. However, the *Flying Tiger* court did not specifically state in which circumstances a court must look to the merits of the underlying dispute. In light of the cite to the *amicus* brief, though, this Court reads *Flying Tiger* to require an examination of the merits of the MPPAA dispute only when there is evidence of irreparable injury to the employer.

merits of the underlying dispute." 663 F.Supp. at 1299.

■ This Court agrees with the *Banner II* interpretation of *McNicholas*, and finds that a district court should *not* examine the merits of the underlying MPPAA liability dispute absent evidence that the alleged employer will be irreparably injured if compelled to make interim payments. To hold otherwise would be contrary to *Flying Tiger* and the MPPAA scheme. If a company from whom interim payments were sought could cause a court, even in the absence of evidence of irreparable injury, to examine the merits of the MPPAA dispute, the role of arbitration would effectively be diminished.

■ Like the plaintiff corporation in *Banner II*, Tiger has not presented evidence of severe financial hardship sufficient to prompt an examination of the merits. *See Banner II*, 663 F.Supp. at 1298; *Bowers*, 689 F.Supp. at 220; *Chicago Truck Drivers*, 694 F.Supp. at 475–76. Tiger argues that its interim payment liability could be substantial—more than $100,-000 per calendar quarter—and that requiring Tiger to make interim payments now would result in a lengthy deprivation. These facts may well be true, but they do not constitute evidence of irreparable injury or severe financial hardship sufficient to block Tiger's interim payment obligations.

This case is distinguishable from *McNicholas*, where the company asserted that compelling the payments would work a severe financial hardship *and* essentially preclude it from resuming operations. *See McNicholas*, 819 F.2d at 685. In contrast, Tiger on this motion has not asserted, let alone proved, that the payments would force it into bankruptcy or otherwise restrict its operations. There is no evidence that the payments would "constitute a crushing economic burden," *Republic Industries*, 718 F.2d at 642, or would cause "unnecessarily harsh and unintended results." *Robbins*, 819 F.2d at 686. Moreover, any injury to Tiger cannot be termed "irreparable" at this stage because Tiger may well prevail on the asserted bases of liability and be able to recover the payments with interest under 29 U.S.C. § 1401(d). Because Tiger has not demonstrated that it will be irreparably harmed if it is required to make interim payments, the Court need not examine the merits of the underlying MPPAA dispute and expresses no opinion on either the accrual theory or the evade-or-avoid dispute.

### 4. Constitutional Challenge

■ Finally, Tiger asserts that it has a constitutionally protected due process right to a preliminary, evidentiary hearing before the assessment of withdrawal liability. Tiger's challenges to MPPAA's pre-hearing interim payment provisions include substantive and procedural due process, vagueness and the "taking clause." Because courts applying a due process analysis in the MPPAA interim payment context have uniformly found that a pre-deprivation hearing is not necessary, the Court will not grant such a hearing in this case. *See, e.g., Keith Fulton & Sons, Inc. v. New England Teamsters and Trucking Industry Pension Fund*, 762 F.2d 1124, 1135–36 (1st Cir.1984), *modified on other grounds*, 762 F.2d 1137 (1st Cir.1985); *Western Conference of Teamsters Pension Tr. Fund v. Thompson Building Materials, Inc.*, 749 F.2d 1396, 1404 (9th Cir.1984), *cert. denied*, 471 U.S. 1054, 105 S.Ct. 2116, 85 L.Ed.2d 481 (1985); *Textile Workers Pension Fund v. Standard Dye & Finishing Co.*, 725 F.2d 843, 854 (2d Cir.), *cert. denied*, 467 U.S. 1259, 104 S.Ct. 3554, 82 L.Ed.2d 856 (1984); *Republic Industries v. Teamsters Joint Council No. 83*, 718 F.2d 628, 641–42 (4th Cir.1983), *cert. denied*, 467 U.S. 1259, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984); *Dorn's Transportation, Inc. v. I.A.M. National Pension Fund*, 578 F.Supp. 1222, 1232–33 (D.D.C.1984), *aff'd mem.*, 753 F.2d 166 (D.C.Cir.1985); *Robbins v. Pepsi–Cola Metropolitan Bottling Co.*, 636 F.Supp. 641, 677–79 (N.D.Ill.1986).

Tiger effectively concedes that an entity whose status as an employer on the date of withdrawal is undisputed may be compelled to make interim payments without a pre-deprivation, evidentiary hearing. However, Tiger argues that an entity that is

contesting its withdrawal liability responsibility *and* its status as an employer is constitutionally entitled to a pre-deprivation hearing. This distinction is not dispositive. In *Republic Industries,* 693 F.2d at 298, the Third Circuit said that Republic Industries' challenge to the constitutionality of MPPAA did not relieve Republic of its obligation to make interim payments. In a subsequent case applying *Republic Industries,* the court stated that a corporation's contention that it was not an employer under MPPAA did "not even remotely approach the significance of a constitutional challenge...." *Barker & Williamson,* 788 F.2d at 128. If payments must be made pending a constitutional challenge, and a MPPAA status dispute (such as the one here) does not rise to the level of a constitutional challenge, then this Court can hardly suspend Tiger's payment obligation while the MPPAA status question is resolved.

Also fatal to Tiger's argument on this point are the *Banner* decisions. Like in the present dispute, the pension fund in *Banner* argued that the corporation (Banner) remained liable for withdrawal liability under the fund's interpretation of § 1398,

and, alternatively, that the disputed corporate transaction was to evade or avoid withdrawal liability. *Banner I,* 657 F.Supp. at 879–80. The court ordered the corporation to make interim payments pending arbitration. *Id.* at 885. When the fund brought a motion for past-due interim payments, Banner responded by arguing, *inter alia,* that requiring it to make the payments in advance of a hearing on the merits would constitute a deprivation of property without due process. *Banner II,* 663 F.Supp. at 1299. The *Banner II* court found, as this Court finds here, that the corporation's due process arguments were without merit.[18] *See id.*

## IV. CONCLUSION

■■■■ For the foregoing reasons, Tiger's motion for partial summary judgment on Count I of the Fund's counterclaim is denied. The Court refers both the dispute over the validity of the accrual theory and the evade-or-avoid issue to arbitration. The Fund's motion for interim payments is granted, with payments to begin immediately.[19] The proceedings in this Court are stayed pending arbitration.

---

18. The parties dispute the application of *United Retail and Wholesale Employees Teamsters Local 115 v. Yahn & McDonnell,* 787 F.2d 128 (3d Cir.1986), to this case. *Yahn & McDonnell* involved a broad constitutional challenge to MPPAA by a company that was undisputably an employer under the statute. *Id.* at 129. The court found the statutory scheme constitutional after severing only the provision of MPPAA that accords the trustees' determination of withdrawal liability a presumption of correctness. *Id.* at 144.

Tiger construes *Yahn & McDonnell* as stating that pension fund trustees are, as a matter of law, inherently biased, and that Tiger is therefore entitled to a pre-deprivation hearing because of the likelihood of an erroneous trustee determination. Tiger reads *Yahn & McDonnell* too broadly. The court struck down only the section of MPPAA that established the presumption, 29 U.S.C. § 1401(a)(3)(A), "leaving the rest of MPPAA fully operative." 787 F.2d at 144. As applied to the facts at hand, *Yahn & McDonnell* means that Tiger is entitled to have a neutral arbitrator conduct a *de novo* review of the assessment of withdrawal liability. *See id.* at 143. To leap to the conclusion that *Yahn & McDonnell* mandates a pre-deprivation hearing here is to read too much into the opinion's language regarding trustee bias. *See id.* at 139–40.

19. MPPAA provides that "[w]ithdrawal liability shall be payable in accordance with the schedule set forth by the plan ... beginning no later than 60 days after the date of the demand...." 29 U.S.C. § 1399(c)(2). The statute further provides that, "[i]f a payment is not made when due, interest on the payment shall accrue from the due date until the date on which the payment is made." 29 U.S.C. § 1399(c)(3).

Here, the original due date for interim payments would appear to be 60 days after the initial demand of January 20, 1988. Were the Court to find interim payments due from Tiger as of that date, the Court could also compel immediate payment of past due installments. *See Robbins v. McNicholas Transportation Co.,* 819 F.2d 682, 686 (7th Cir.1987). An order compelling interim payments is an equitable remedy, and the Court may exercise its discretion in fashioning the order. *See id.* at 685. Because of the admitted ambiguity in the original demand, the Court will make interim payments due 60 days from the date of the second, more explicit demand, December 2, 1988. The due date is thus January 31, 1989. Interest will accrue from that date. *See* 29 U.S.C. § 1399(c)(3).

An Order will issue in accordance with this Opinion.