EXXON CORPORATION, et al., Plaintiffs,

v.

DEPARTMENT OF ENERGY, et al., Defendants,

The 341 Tract Unit of the Citronelle Field, Intervenor-Defendant.

Civ. A. No. 81-25 MMS.

United States District Court, District of Delaware.

Dec. 29, 1983.

Thomas Herlihy, III, Herlihy, Herlihy & Harker, Wilmington, Del., for plaintiffs.

Joseph J. Farnan, Jr., U.S. Atty., and Peggy L. Ableman, Asst. U.S. Atty., Dept. of Justice, Wilmington, Del., Thomas H. Kemp, U.S. Dept. of Energy, Washington, D.C., for defendants.

Arthur G. Connolly, Jr., Connolly, Bove, Lodge & Hutz, Wilmington, Del., for intervenor-defendant; Williams S. D'Amico, J. Peter Luedtke, and Karen L. Treadway, Foreman & Dyess, Washington, D.C., of counsel.

MURRAY M. SCHWARTZ, District Judge.

Plaintiffs, several major oil corporations, instituted this lawsuit on January 22, 1981, against the United States Department of Energy, the Secretary of Energy, the Administrator of Economic Regulatory Administration, and the Director of the Office of Hearings and Appeals. On December 1, 1982, the 341 Tract Unit of the Citronelle Field ("Citronelle") was permitted to intervene as a defendant. (Doc. 45). The case challenges the Department of Energy's decision to grant Citronelle's petition for exception relief from the department's Tertiary Incentive Program. Pending before the Court is Citronelle's motion to stay this proceeding.

*Background*

The Department of Energy ("DOE") administers several regulatory programs designed to increase domestic crude oil production. One such program, called the Tertiary Incentive Program, allowed a producer to sell some of its price controlled oil at higher, world market prices to cover qualified expenses incurred in connection with high risk tertiary enhanced recovery projects.[1] 10 C.F.R. § 212.78 (1980). Apparently, Citronelle had been attempting to implement a tertiary recovery project for several years. (Doc. 60 at 7). In August, 1979, Citronelle elected to fund a project through the Tertiary Incentive Program, but determined that it could do so only if DOE were forthcoming with some regulatory relief. Accordingly, Citronelle petitioned DOE for "exception relief."[2] Two decisions by DOE's Office of Hearings and Appeals ("OHA") form the background to the instant litigation and the motion to stay.

On December 31, 1980, OHA granted temporary exception relief to Citronelle. *The 341 Tract Unit of The Citronelle Field,* 7 DOE (CCH) ¶ 81,140 (1980). Among other things, the December 31 decision ("interim decision") recertified enough of Citronelle's price controlled crude oil to allow Citronelle to generate over $60 mil-

---

**1.** Tertiary recovery refers to various processes for extracting oil from fields that have been exhausted by conventional recovery techniques.

**2.** Under the Department of Energy Organization Act, 42 U.S.C. §§ 7101–7352 (Supp. II 1978), DOE has the power to make adjustments to any rule, regulation, or order promulgated under certain energy programs when necessary "to prevent special hardship, inequity, or unfair distribution of burdens." 42 U.S.C. § 7194(a). Exception relief is considered an "adjustment" for purposes of the Act. *See Texaco, Inc. v. DOE,* 663 F.2d 158 (D.C.Cir.1980). DOE's established procedures for exception relief petitions are found in 10 C.F.R. §§ 205.50 *et seq.*

lion in net revenues.[3] The applicable regulations, however, fixed the maximum level of funding for a single tertiary recovery project property at $20 million. *See* 10 C.F.R. § 212.78(c). Because the decision adversely affected plaintiffs' obligations under the Old Oil Entitlements Program, 10 C.F.R. § 211.67, they sought immediate judicial review by filing this action on January 22, 1981. Recognizing, however, that the agency's interim decision was not final, the parties on January 30, 1981, stipulated to stay the proceedings.[4] The Court vacated the stay on November 23, 1982.

OHA issued its final decision on January 31, 1983.[5] This ruling affirmed the interim order, but significantly modified Citronelle's repayment obligations.[6] After analyzing the January 31 decision, Citronelle concluded that the modification threatened the economic viability of the tertiary recovery project. (Doc. 60 at 19). Citronelle consequently filed a petition with OHA on March 19, 1983, requesting reconsideration of the repayment terms contained in the January 31 order. Thereafter, Citronelle filed a motion in this Court requesting a stay until OHA decides the petition for reconsideration.[7]

*The Merits*

■ The procedural posture of Citronelle's exception petition is the result of a possible anomaly in the provisions governing review of petitions for exception relief. Under the Emergency Petroleum Alloca-

tion Act, 15 U.S.C. §§ 751–760 (1982), any "party suffering legal wrong" because of a final decision granting exception relief is authorized to bring an action in district court. *See* 15 U.S.C. § 754(a)(1) *incorporating* 12 U.S.C. § 1904 note at § 210 (1976). *See also Texaco, Inc. v. Department of Energy*, 663 F.2d 158 (D.C.Cir. 1980). In contrast, a party "adversely affected by a denial of a request" for exception relief, must pursue additional agency appeals before it can seek judicial review. 42 U.S.C. § 7194. In this case OHA's January 31 decision contains a grant and a denial of relief, thus triggering both statutory provisions. As a result, plaintiffs are permitted to challenge OHA's decision in this Court despite the fact that a portion of the order is subject to further agency review.

■ Faced with proceedings in different fora, Citronelle urges the Court to stay this action until OHA rules on the reconsideration petition. Although Citronelle concedes, as it must, that plaintiffs have a statutory right to judicial review, Citronelle posits two institutional reasons why this case should not go forward: (1) until OHA reconsiders the repayment terms, the issues before the Court are not fit for judicial resolution; and (2) judicial review is potentially wasteful because Citronelle may drop its tertiary recovery project, rendering the issues in this case moot.

3. These funds were deposited in a special escrow account and are distributed to Citronelle only upon the order of OHA. Approximately $25 million from this account has been distributed to Citronelle.

4. Pursuant to this stipulation an interest bearing litigation escrow account was established in which $14.2 million from the special escrow account was deposited. This amount represents plaintiffs' increased obligations or reduced benefits under the Old Oil Entitlements Program, allegedly caused by DOE's grant of interim exception relief. Presently, there is approximately $19 million in the account.

5. The Office of Hearings and Appeals January 31, 1983 Decision and Order is attached as Exhibit A to Plaintiffs' Third Amended Complaint. (Doc. 54).

6. The exception relief granted in the interim decision was conditioned on Citronelle's agreement to repay that relief, plus interest at the prime rate, if the project was commercially successful. (Doc. 60 at 18). According to Citronelle, the January 31 decision modified these terms by, among other things, increasing the rate of interest and omitting the term commercial from the description of success. (Doc. 60 at 19).

7. Citronelle requests that the stay extend until 20 days after OHA issues its ruling on reconsideration. However, if Citronelle appeals OHA's ruling a further stay of the action may be requested. *See* Doc. 58 p. 3 n. *.

Citronelle's first argument is based on an analogy from the ripeness doctrine. Citronelle asserts that because a portion of the January 31 final order is subject to further agency review, "consideration of this case should await further crystallization of the issues or a further showing of concrete harm." *Coastal States Gas Corp. v. Department of Energy*, 495 F.Supp. 1300, 1304 n. 3 (D.Del.1980). In support of its view of the case, Citronelle argues that the part of the January 31 decision which is final—the grant of relief—"is so closely related to the part denying relief that the two cannot logically or practicably be separated." (Doc. 60 at 27). According to Citronelle, the issues before the Court are thus not "ripe" for judicial determination.

As a practical matter it is true that *to Citronelle* the repayment issue is inextricably linked with the grant of exception benefits. And, in a practical sense, OHA's exception decision is not "final" because Citronelle must await further agency action before it can evaluate the economic viability of its tertiary recovery project. However, from the plaintiffs' perspective the two issues are logically and legally distinct. Plaintiffs' suit attacks the lawfulness of OHA's decision to grant relief, not the repayment provisions contained in that order. *See* Doc. 61 at 2, 5 n. 8.[8] To resolve the issues in plaintiffs' complaint, the Court will examine, among other things the scope of DOE's statutory authority and the propriety of the grant of exception relief. The particular repayment plan chosen by OHA is largely, if not entirely, irrelevant to the above analysis.

An examination of the purposes underlying the ripeness doctrine further demonstrates the inherent weakness in Citronelle's analogy. In *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), the Supreme Court explained that the basic rationale of the doctrine

> is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

*Id.* at 148–49, 87 S.Ct. at 1515–1516. None of these concerns are present in this case. The questions raised in plaintiffs' third amended complaint are purely legal and arise in the context of a specific ruling in a particular case. *Cf. Toilet Goods Association v. Gardner*, 387 U.S. 158, 163–64, 87 S.Ct. 1520, 1524–1525, 18 L.Ed.2d 697 (1967). In addition, there is no question that this lawsuit challenges DOE's final, authoritative ruling on the propriety of granting over $60 million in exception relief.[9] The agency has applied its full expertise to this question and the administrative record is now complete. Similarly, there is no risk that review will interfere with ongoing administrative proceedings. Citronelle's petition does not require OHA to address the legal issues now before the Court, but instead requires OHA to reconsider only the terms and conditions of Citronelle's repayment obligations. Thus,

---

**8.** At the hearing on Citronelle's motion the Court inquired whether plaintiffs would seek to amend their complaint to challenge OHA's decision regarding Citronelle's repayment obligations. Plaintiffs have agreed not to challenge the outcome of Citronelle's request for a change of the interest rate or the method by which Citronelle must repay the $60 million grant of relief. Letter from Thomas Herlihy, III to the Honorable Murray M. Schwartz, page 1 (September 16, 1983). The Court recognizes there is a possibility that plaintiffs may seek to amend their complaint to challenge OHA's decision if OHA fails to require Citronelle to repay monies

directly to plaintiffs and other injured parties. Plaintiffs' agreement, however, underscores that the issues before the Court narrowly focus on the lawfulness of OHA's grant of exception relief.

**9.** Indeed, the January 31 decision itself recognizes that judicial review may go forward. Paragraph 15 states that portions of "this Decision constitute final Orders of the Department of Energy of which any party may seek judicial review."

granting a stay at this time would not further any of the purposes served by the ripeness doctrine.

Although the issues are fit for judicial resolution, I am troubled by the prospect that this action may become moot or otherwise drastically change if Citronelle does not prevail before the agency.[10] While plaintiffs have cited cases standing for the proposition that a court should not withhold judicial review simply because there is a possibility of mootness, the expense of potentially unnecessary litigation and concomitant inroad on judicial economy is always a concern. Indeed, in *Landis v. North American Company*, 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936), the Supreme Court said "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its dockets with economy of time and effort for itself, for counsel, and for litigants. How this can be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* at 254–55, 57 S.Ct. at 166.

The Court will consider staying an action while an agency plays its hand, but such an order should be entered only if it appears that an appropriate solution for the complex issues raised by a complaint can be advanced or resolved through the flexibility of the administrative process. In this case, however, administrative processes are not calculated to settle or streamline any of the issues before the Court. If relief does come, it will be the result of Citronelle's voluntary decision to drop its recovery plan and not because of any agency action or expertise.

Admittedly, by denying Citronelle's motion for a stay there is a risk of piece-meal and even unnecessary litigation. However, balanced against the Court's institutional concerns is plaintiffs' statutory right to judicial review. *See El Paso Electric Co. v. Federal Energy Regulatory Commission*, 667 F.2d 462, 467 (5th Cir.1982). Indeed, this forum is now the only one in which plaintiffs can obtain any review of OHA's action. *See Texaco, Inc. v. Department of Energy*, 663 F.2d 158 (D.C.Cir. 1980). Plaintiffs waited three years before the agency issued its final decision on Citronelle's original request for exception relief. Citronelle's present petition has been pending before OHA since March, 1983, and there is a possibility, should Citronelle not get repayment terms to its liking, that there will be further appeals to the Federal Energy Regulatory Commission.[11] Faced with the possibility that the stay in this case may extend for an indeterminate length, the Court will not enter an order which may further frustrate plaintiffs' statutory rights.

*Conclusion*

Citronelle's motion for a stay will be denied.

---

**10.** Whether this case will become moot if Citronelle abandons its tertiary recovery project is unclear. At oral argument, plaintiffs pointed out that even if Citronelle drops its project there may still be a live controversy over who is entitled to the funds in the litigation escrow account. *See* Doc. 65 at 53–56. Resolution of that issue may well require the Court to reach the lawfulness of the January 31 decision.

**11.** Citronelle's motion requests a stay of proceedings only until 20 days after OHA issues its ruling. At oral argument, DOE was unable to give the Court any indication as to how long it will be before OHA determines the motion for reconsideration. Moreover, it is likely that Citronelle will assert the same arguments in support of a continued stay pending FERC's final decision.