**The FLYING TIGER LINE, INC., et al., Plaintiffs,**

v.

**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, et al., Defendants.**

**Civ. A. No. 86-304-CMW.**

United States District Court, D. Delaware.

June 29, 1989.

R. Franklin Balotti, Jesse A. Finkelstein and William W. Bowser of Richards, Layton & Finger, Wilmington, Del. (Peter A. Gold and Robert G. Haas of Blank, Rome, Comisky & McCauley, Philadelphia, Pa., Douglas D. Broadwater and Richard Liebeskind, Jr. of Cravath, Swaine & Moore, New York City, of counsel), for plaintiffs.

David McBride and Barry Willoughby of Young, Conaway, Stargatt & Taylor, Wilmington, Del. (Thomas W. Jennings and Kent Cprek of Sagot & Jennings, Philadelphia, Pa., of counsel), for defendants.

## MEMORANDUM OPINION

CALEB M. WRIGHT, Senior District Judge.

This protracted litigation involves withdrawal liability under the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381–1461. The Court returns to this action for a decision

on the motion of defendant Teamsters Pension Trust Fund of Philadelphia & Vicinity ("the Fund") for attorneys' fees and costs in connection with its successful motion for summary judgment for an award of interim payments.

## I. STATUS OF CASE

This suit commenced in July, 1986, when plaintiffs The Flying Tiger Line, Inc., Tiger International, Inc. and Warren Transport, Inc. (collectively "Tiger") filed an action in this Court seeking declaratory and injunctive relief. The Fund subsequently filed a counterclaim for withdrawal liability. The history of this case has been adequately set forth in previous opinions, and will not be repeated here except as relevant. *See Flying Tiger Line v. Teamsters Pension Tr. Fund*, 830 F.2d 1241 (3d Cir.1987); *Flying Tiger Line v. Cent. States Pension Fund*, 704 F.Supp. 1277 (D.Del.1989); *Flying Tiger Line v. Cent. States Pension Fund*, 659 F.Supp. 13 (D.Del.1986).

In an Opinion and Order dated February 6, 1989, the Court denied Tiger's motion for summary judgment and granted the Fund's cross motion for summary judgment. Specifically, the Court sent the entire MPPAA dispute between Tiger and the Fund to arbitration and ordered that Tiger make interim payments of withdrawal liability pending completion of arbitration. *See Flying Tiger*, 704 F.Supp. at 1295. Additionally, the Court stayed the proceedings in this court pending arbitration. *Id.*

■ On February 24, 1989, the Fund filed a motion for attorneys' fees and costs in connection with its efforts to obtain interim withdrawal liability payments from Tiger.[1] In support of its motion, the Fund submitted affidavits from its attorneys, listing attorneys' fees of $24,070.75 and costs of $756.83 as having been incurred in the interim-payments portion of this litigation.[2] Both parties subsequently filed briefs in connection with the Fund's motion.[3]

## II. ANALYSIS

Tiger raises four arguments in opposition to the Fund's application for fees and costs. None of these arguments, which will be addressed here *seriatim*, precludes such an award.

The Fund moved for fees and costs pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.;* the MPPAA, 29 U.S.C. § 1381 *et seq.;* and Local Rule 6.3. The applicable section of ERISA is section 1132(g)(2):

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (D) Reasonable attorney's fees and costs of the action, to be paid by the defendant, and....

29 U.S.C. § 1132(g)(2). Section 1451(b) of MPPAA provides that a failure to make withdrawal liability payments within the time prescribed "shall be treated in the same manner as a delinquent contribution (within the meaning of section 1145 of this title)." 29 U.S.C. § 1451(b).

■ The language of section 1132(g)(2) is mandatory. In the Third Circuit, when a

---

1. On March 28, 1989, the Fund filed a second motion, which seeks "discretionary" attorneys' fees for "all time expended in this action in addition to the attorneys' fees and costs awarded to it pursuant to the Fund's pending motion for attorneys' fees for obtaining interim payments." The Court granted the Fund's unopposed request to hold the second motion in abeyance pending the outcome of the present motion.

2. The affidavit of Barry M. Willoughby itemizes fees for Willoughby ($150/hr.), David C. McBride ($190/hr.) and Timothy J. Snyder ($100–$115/hr.). The affidavit of Kent Cprek itemizes fees for Cprek ($125/hr.), Sanford G. Rosenthal ($100/hr.) and Robert Goldstein ($75/hr.).

3. The Court did not conduct an evidentiary hearing on the Fund's motion for fees and costs, and will decide the motion based on the affidavits and briefs. A fee application may be decided without a hearing; a hearing must be held only where the court cannot fairly decide disputed questions of fact without it. *Blum v. Witco Chemical Corp.*, 829 F.2d 367, 377 (3d Cir.1987).

pension fund successfully obtains an order compelling interim payments, an award of attorney's fees is "no longer discretionary." *United Retail & Wholesale Employees Teamsters Union Local v. Yahn & McDonnell, Inc.*, 787 F.2d 128, 134–35 (3d Cir.1986) (quoting *Operating Engineers Pension Trust v. Reed*, 726 F.2d 513, 514 (9th Cir.1984)), *aff'd*, 481 U.S. 735, 107 S.Ct. 2171, 95 L.Ed.2d 692 (1987). There is no basis for a district court to defer an award of fees and costs until after arbitration or review in the district court. *Id.* at 135.

■ Tiger's first argument in opposition to the Fund's motion for fees and costs is that the statutory scheme provides for such items only in an action "by a fiduciary for or on behalf of a plan", and that, because this action was brought by Tiger seeking declaratory judgment and not by the Fund, any award is precluded by the language of section 1132(g). This misguided argument by Tiger exalts form over substance. It is true that the literal wording of section 1132(g)(2) refers to an action by a fiduciary. However, the Third Circuit has held that a counterclaim by a pension fund for withdrawal liability is an "action" to enforce a delinquent contribution under section 1145, and that the attorney's fee provision relevant to such a counterclaim is section 1132(g)(2). *Penn Elastic Co. v. United Retail & Wholesale Emp.*, 792 F.2d 45, 47 (3d Cir.1986). Tiger's argument that it should not have to pay fees and costs because the Fund did not initiate this case fails in light of this holding.[4]

Tiger's second argument is that it has never failed to make withdrawal liability payments. It bases this assertion on the fact that the Court's Opinion of February 6, 1989, made a discretionary ruling that Tiger's payments of withdrawal liability would become due on January 31, 1989, sixty days from the date of the Fund's

"precautionary re-demand." *See* 704 F.Supp. at 1295 n. 19. Tiger's defense in this regard is based on a misreading of the Court's Opinion. If Tiger has never failed to make payments, one wonders why the parties have spent much of the past year in a controversy over Tiger's withdrawal liability.

It is true that the Court, exercising its discretion in fashioning an equitable remedy, ordered that payment would not be due until January 31, 1989. However, the Court did *not* hold that the Fund's first demand letter, dated January 20, 1988, was ineffective. To the contrary, the Court found that "the Fund's demand letter [of January 20, 1988] complied with MPPAA and was sufficient to put Tiger on notice as to the alternative bases of liability." *Flying Tiger*, 704 F.Supp. at 1285. Tiger was thus under a statutory obligation to make payments of withdrawal liability within sixty days of the initial demand. *See* 29 U.S.C. § 1399(c)(2). It failed to do so, and was therefore delinquent in its withdrawal liability obligation.

■ Tiger next argues that the Fund's motion violates the Court's stay of these proceedings. At the close of its most recent Opinion in this case, the Court stated that the "proceedings in this Court are stayed pending arbitration." *Flying Tiger*, 704 F.Supp. at 1295. Contrary to Tiger's assertion, this stay is not so broad as to preclude consideration of the Fund's ' motion.

The power to stay proceedings is incidental to the power inherent in every court to schedule disposition of cases on its docket so as to promote fair and efficient adjudication, and how this can best be done is a decision properly vested in the trial courts. *Gold v. Johns–Manville Sales Corp.*, 723 F.2d 1068, 1077 (3d Cir.1983); *Exxon Corp. v. Dept. of Energy*, 577 F.Supp. 703, 707

---

4. Tiger attempts to distinguish *Penn Elastic* by noting that the counterclaim filed in that case was based on an outstanding, valid demand for withdrawal liability for interim payments that were in arrears at the time the counterclaim was filed. *See* 792 F.2d at 46. In the present case, the Fund filed its counterclaim on August 8, 1986, well before the Fund filed its notice and

demand of withdrawal liability on January 20, 1988. While this is indeed a factual distinction between the two cases, the Court does not deem it dispositive. The court in *Penn Elastic* did not qualify its holding that "the Fund's counterclaim was an action to enforce a delinquent contribution...." *See* 792 F.2d at 47.

(D.Del.1983). A stay is thus a matter in the sound discretion of the court. *Cessna Aircraft Co. v. Fidelity and Cas. Co. of N.Y.*, 616 F.Supp. 671, 675 (D.N.J.1985); *Amersham Intern. PLC v. Corning Glass Works*, 618 F.Supp. 507, 509 (E.D.Mich. 1984). A stay of proceedings pending arbitration does not deprive the court of jurisdiction to enter ancillary orders such as an award of attorney's fees. The mere fact that the only matter pending before a court is a motion for attorney's fees does not mean that the court lacks jurisdiction or that the case is not pending. *Knights of the K.K.K. v. East Baton Rouge*, 679 F.2d 64, 68 (5th Cir.1982); *Buckton v. National Collegiate Athletic Assoc.*, 436 F.Supp. 1258, 1262–63 (D.Mass.1977).

Tiger's fourth argument in opposition to the Fund's motion is that the Fund has not adequately substantiated its request. In support of its motion, the Fund submitted affidavits of its two lead attorneys in this case, Barry M. Willoughby and Kent Cprek. Tiger does not challenge these affidavits on grounds of hourly rates, time expended or description of services. Rather, Tiger argues that the affidavits do not adequately demonstrate whether the expenses incurred were the result of the Fund's attorneys' efforts on issues other than interim payments.

This argument by Tiger fails as well. Both attorneys specifically state in their affidavits that the fees sought are for time expended on the interim payments issue, and not on other matters. Tiger's argument is further weakened by the fact that an award of fees and costs for time expended on other matters is the subject of a separate motion by the Fund.

Finally, Tiger argues that, in the event the Court decides an award of fees and costs is mandated, the amount of the award should be nominal in light of the lack of any bad faith by Tiger. Even though an award of fees and costs may be mandatory, the court retains the discretion to determine the reasonableness of the fee. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (applying Civil Rights Attorney's Fee Awards Act of 1976, 42 U.S.C. § 1988); *Vernau v. Frankstown Food A Rama, Inc.*, 651 F.Supp. 245, 247 (W.D.Pa.1986) (applying 29 U.S.C. § 1132(g)). The courts have identified the salient factors relevant to such a determination in an ERISA action: (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions. *Gray v. New England Tel. & Tel. Co.*, 792 F.2d 251, 257–58 (1st Cir.1986); *Secretary of Dept. of Labor v. King*, 775 F.2d 666, 669 (6th Cir.1985); *Ursic v. Bethlehem Mines*, 719 F.2d 670, 673 (3d Cir.1983). *See also Monkelis v. Mobay Chemical*, 827 F.2d 935, 936 (3d Cir.1987).

This five-factor test is a flexible one, developed so as to give guidance to courts in interpreting the discretion to be exercised under the statute. *Gray*, 792 F.2d at 258. The factors are only guidelines, and not every factor must be considered in each case. *Id.* Nor should any one factor be dispositive. *Id.* at 258, 259.

A review of these five factors does not strongly favor either side here, and definitely does not mandate reduction of the fees and costs to a nominal amount. First, there is no indication of bad faith on the part of either litigant. Second, no evidence of the financial strength of the parties is before the Court on this motion. Third, an award of fees and costs in favor of the Fund might have some deterrent effect on similarly situated parties. Fourth, resolution of the Fund's motion did resolve a significant and previously unsettled legal question under ERISA. Finally, the factor of the relative merits of the parties' positions is neutral. The positions of both sides had some merit and were reasonably presented. *Cf. Vernau*, 651 F.Supp. at 247–48 (concluding that review of five

factors in action under § 1132(g)(2) did not favor either side).

■ Application of this five-factor test does not, however, end the inquiry into the reasonableness of a request for fees and costs. *Id.* at 248. In all phases of the fee determination, the district judge must cast a critical eye on the award request. *Ursic*, 719 F.2d at 676. The court should exclude from the fee calculation hours that were not "reasonably expended." [5] *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939. "Billing judgment" is a consideration well known to the responsible bar; it should not disappear when the courts are setting statutory fees. *Ursic*, 719 F.2d at 678 (quoting *Hensley*, 461 U.S. at 434, 437, 103 S.Ct. at 1939, 1941). *See also Blum v. Witco Chemical Corp.*, 829 F.2d 367, 378 (3d Cir.1987).

Section 1132(g) confers broad discretion on a district court in making an award of attorney's fees. *King*, 775 F.2d at 669. Applying that discretion to the facts at hand, the Court finds that the total number of hours expended by attorneys Willoughby and Cprek on the Fund's motion for interim payments was not reasonable. ERISA litigation is admittedly complex and requires many hours of lawyers' services. Moreover, Willoughby and Cprek, and their respective law firms, have significant experience in ERISA actions, and the Fund's motion involved the novel issue of whether a court may compel interim payments from a corporation that disputes its underlying status as an entity responsible for withdrawal liability.

Counterbalancing these considerations, though, is the Court's finding that the Fund's motion could have been brought by a reasonably experienced team of ERISA attorneys working about one-third less hours than did the Fund's attorneys. The factual and legal issues on the Fund's motion for interim payments were relatively straightforward. The Fund's briefing on its motion for interim payments consisted of a ten-page opening brief and a twenty-three page reply brief. Willoughby and his associates request attorneys' fees for *more than 169 hours*, and Cprek and his associates seek compensation for *more than fifteen hours*. While the Court applauds the Fund's attorneys for the comparative brevity of their briefing, the Court finds that these hourly totals, which chiefly represent work on the briefs and on argument preparation, do not represent time "reasonably expended."

A thirty-three percent pro rata reduction in the hours requested is a decision in the discretion of the Court.[6] *See Daggett v. Kimmelman*, 811 F.2d 793, 797–98 (3d Cir. 1987) (affirming ten percent pro rata reduction in hours requested in civil rights case). The Court is cognizant of the Third Circuit's admonition that "trial judges may not, in perfunctory fashion, order blanket percentage reductions without thoroughly probing the record and noting their reasons with care and specificity." *Id.* at 797.

A number of specific circumstances merit the reduction ordered here. For instance, Willoughby's affidavit itemizes more than sixty-eight hours of work on the Fund's brief by Timothy J. Snyder, an associate in Willoughby's law firm. Willoughby lists more than seven hours spent in phone conferences with Cprek and others, and more than forty-three hours of work on the brief by himself. Cprek's affidavit itemizes more than six hours of phone conferences with Willoughby and others.

Although these activities involved work by the attorneys outside the presence of the Court, the Court finds that at least one-third of this work was excessive and duplicative—that is, the Fund's position could reasonably have been presented in

---

5. The *Hensley* court stated that "[c]ounsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." 461 U.S. at 434, 103 S.Ct. at 1939–40.

6. "The Court may discount the number of hours counsel has submitted in its logs, if the Court determines, based upon the facts, circumstances and legal issues in the case, that the hours expended were unnecessary, unrelated or involved duplication of activity." *United Fed'n of Postal Clerks v. United States*, 61 F.R.D. 13, 19 n. 16 (D.D.C.1973).

two-thirds of the time itemized in the affidavits.[7] The Court bases this conclusion on its not insignificant experience in ERISA cases and similar litigation. The Court will thus reduce by one-third the amount of attorneys' fees to be awarded the Fund's attorneys.

## III. CONCLUSION

For the foregoing reasons, the Court will grant the Fund's motion for attorneys' fees and costs. Costs will be awarded in the amount requested—$756.83. However, the total amount to be awarded for attorneys' fees shall be reduced by one-third—from the requested $24,070.75 to $16,047.16.

The Court will enter an Order in accordance with this Opinion.

---

7. The Court acknowledges the approximate nature of this determination. "Such a determination can never be reduced to a neat mathematical formula; it involves important matters of judgment." *Hall v. Borough of Roselle,* 747 F.2d 838, 841 (3d Cir.1984) (referring to court's fixing reasonable hourly rate); *see generally* Berger, *Court Awarded Attorneys' Fees: What is "Reasonable"?,* 126 U.Pa.L.Rev. 281, 316–20 (1977).